STATE of Missouri,
Plaintiff–Respondent,

v.

Woodrow ANDERSON,
Defendant–Appellant.
(Three Cases)

Woodrow ANDERSON,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15489 to 15491 and 16312.

Missouri Court of Appeals,
Southern District,
Division Two.

March 5, 1990.

Susan L. Hogan, Columbia, for defendant-appellant and movant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent and plaintiff-respondent.

HOGAN, Judge.

By information filed in the Circuit Court of Mississippi County, defendant Woodrow Anderson was charged with selling cocaine to one A.R. Riney in violation of § 195.020.1, RSMo Supp.1984. By a second information filed in the same court, defendant was charged with selling cocaine to one Joseph G. Crump in violation of § 195.020.1, RSMo Supp.1984. In a third information, defendant was charged with selling marihuana to Crump in violation of § 195.020.1, RSMo Supp.1984. All three informations charged that defendant was a prior offender within the intent of § 558.016.2, RSMo Supp.1984. Over the defendant's objection, the court ordered that the three informations be "consolidated" and tried together. A jury found the defendant guilty of each offense charged. His punishment for each offense was assessed at imprisonment for a term of 20 years. It was ordered that the sentences be served concurrently. The defendant appeals. We affirm.

In reviewing the record on a criminal appeal, this court accepts as true all evidence tending to prove the defendant's guilt together with all reasonable inferences to be drawn therefrom, disregarding all evidence and inferences to the contrary. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Porter,* 640 S.W.2d 125, 126[1, 2] (Mo.1982). So taken and considered the evidence was that in March and April 1985, Alvin Riney and Joseph Crump, both members of the Missouri State Highway Patrol, were engaged in an undercover investigation of the sale of drugs in southeast Missouri. They were working with one Ernestine (or Earnestine) Jones. The capacity in which Ms. Jones acted is not clear. She assisted Troopers Riney and Crump by arranging purchases of controlled substances, but it does not appear that she was vested with any authority by any agency of the State.

Testimony concerning the first sale of cocaine came from Trooper Riney. About 3:15 p.m. on March 18, 1985, Riney met the defendant at Ernestine Jones' residence. The defendant was accompanied by one Stephon Peterson.[1] Peterson produced a cellophane packet which contained a white powder. He told Riney that the packet contained ⅛ ounce of cocaine. Peterson's price for that amount was $360. Riney asked if he could purchase 2 grams of the cocaine. Peterson said that would be fine and the price for 2 grams would be $220. Peterson made up two 1–gram packets of cocaine, gave them to Riney and Riney gave Peterson $220. Riney put the cocaine in an "evidence bag." A sample of the contents of this evidence bag was later tested and found to be cocaine.

---

1. Peterson was subpoenaed by the defendant, but at a pretrial conference, he indicated that he would invoke his privilege against self-incrimination if he was called.

The second sale of cocaine took place on April 2, 1985. Trooper Crump testified he contacted the defendant at a place described as "Bruenderman's." Crump told the defendant he would be interested in buying about ⅛ ounce of cocaine. Defendant indicated he would have to contact somebody but would be in touch with Crump later at Ernestine Jones' residence. The defendant did meet Crump in Ernestine's "back room," but stated he was unable to obtain the ⅛ ounce of cocaine. Defendant was able, however, to obtain what he called "$35 bags" of cocaine. Crump bought four such bags of cocaine from the defendant. At Crump's direction, Ernestine made a "street test" of the cocaine. The test was pronounced satisfactory. Crump paid Peterson $140 and put the cocaine in an evidence bag. Trooper Crump's purchase, introduced in evidence as State's exhibit 2, was tested and found to be cocaine.

The defendant was also charged with a sale of marihuana on April 12, 1985. The evidence tending to prove this charge was that on April 12, Crump and Ernestine Jones went to the defendant's house. The defendant and Crump discussed matters not related to cocaine or other controlled substances. Defendant asked Crump if he would be interested in buying some pot. Defendant's price was $250 for a quarter pound. Crump said he would like to have a look at the marihuana. The defendant agreed to contact Crump at Ernestine Jones' residence.

A short time later the defendant and an unidentified man contacted Crump at Ernestine Jones' house, in the back room. When the defendant arrived, he had a clear plastic bag of marihuana with him. Crump paid the defendant $250 for the marihuana. The defendant placed the money in his wallet. It was stipulated that the substance sold on this occasion was marihuana.

An information charging the first sale of cocaine was filed February 4, 1986. An information charging the second sale of cocaine was filed the same day. The information charging the sale of marihuana was also filed February 4, 1987. All three cases were tried together on August 18, 1987. The defendant appealed from each conviction separately. The appeals, Nos. 15489, 15490 and 15491, were consolidated in this court and will be considered together.

The defendant has briefed three assignments of error. His first point, slightly paraphrased, is that the trial court erred in denying his oral application for a continuance to obtain the testimony of Ernestine Jones. The defendant argues that the denial of this application infringed his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor, because "appellant expected Jones to corroborate his defense that Jones had hired appellant to assist her in undercover activities, and Jones was the only person who could corroborate appellant's claim that he was [so] employed...." Defendant further asserts that the denial of his application was prejudicial because Ernestine's testimony would probably have produced a different result. He also argues that "there was no evidence that the State had endeavored to locate Jones, despite the trial court's order to that effect, so there was no indication that Jones' presence could not have been obtained within a reasonable period of time."

■ The premise of this point is that Ernestine Jones was an undercover agent vested with authority to employ the defendant and grant him immunity from the consequences of his criminal acts. This premise, or assumption, seems to be based on the fact that Ernestine was described in a writing, contained in the State's file, as a "confidential informant." The following remarks were exchanged during a conference immediately preceding the trial:

\*　　\*　　\*　　\*　　\*　　\*

"[DEFENSE COUNSEL]: The defense, we would negate the elements of criminal intent due to the fact that Ernestine Jones, if testifying as I have indicated, [the defendant] expects her to indicate, in fact, he was operating with immunity. Whether immunity in fact blessed and declared by the State is irrelevant, but what is relevant is the crimi-

nal intent under which [sic] he was working. My understanding is that he was retained, paid, told he would be held in confidence, would not face any charges from this, and, in fact, Ernestine Jones was a duly-sanctioned, as I understand, representative of the State of Missouri in undercover capacity.

THE COURT: How is it you understand that?

[DEFENSE COUNSEL]: From discovery from the State. She is labeled, from information [in the prosecutor's] office, 'Ernestine Jones, confidential informant No. 326, Missouri State Highway Patrol.'

THE COURT: You indicated she was an agent?

[DEFENSE COUNSEL]: An undercover agent.

THE COURT: I think there is a big difference in undercover agent and informant. An agent is one thing and—

[DEFENSE COUNSEL]: I would say she was being used in an undercover capacity.

\* \* \* \* \* \*

THE COURT: The Court notes the State has advised this Court that they have sought this woman almost two years.

[THE PROSECUTOR]: That's correct, Your Honor, over two years now.

THE COURT: That the warrants are out in the NCIC and the MULE system, so, therefore, every resource, as I understand it, available to the State has been utilized for almost two years to determine the whereabouts of this woman. In fact, her presence for criminal charges [is] being sought by the county directly south of us...."

\* \* \* \* \* \*

The defendant testified that he had made an agreement with Ernestine "that [he] didn't have to talk to nobody else but her, that she would hire [him] to work for her." There is, however, no basis in the record to support the conclusion that Ernestine was vested with any authority by any agency of the State, or that she had any authority to grant the defendant immunity from his criminal acts. The whole argument that defendant was denied his Sixth Amendment right to compulsory process is based on trial counsel's speculation that Ernestine was an undercover agent with authority to recruit other agents and grant them immunity from criminal liability simply because she was described as "confidential informant No. 326, Missouri State Highway Patrol."

The State suggests that the point is without merit because the application for continuance was made orally on the day of trial and did not comply with the requirements of Rules 24.09 and 24.10. We agree that the defendant's failure to request the continuance by a written motion accompanied by an affidavit is a sufficient ground for this court to affirm the trial court's ruling. *State v. Tettamble*, 746 S.W.2d 433, 439 (Mo.App.1988); *State v. Merrick*, 677 S.W.2d 339, 342 n. 2 (Mo.App.1984); *State v. Diamond*, 647 S.W.2d 806, 808[1] (Mo.App.1982). More important, in our view, is the improbability that the personal presence of the witness could have been obtained. One of the important issues to be considered in ruling on an application for a continuance to obtain the presence of an absent witness is whether there is a reasonable probability that the witness' personal presence will ever be obtained. *State v. Oliver*, 572 S.W.2d 440, 445[2–4] (Mo. banc 1978); *State v. LeBeau*, 306 S.W.2d 482, 486–87 (Mo.1957); *State v. McLaurin*, 684 S.W.2d 570, 571 (Mo.App. 1984). Even assuming the truth of counsel's extravagant assumption that Ernestine was an "undercover agent" with authority to employ other agents, it appeared that she had fled the jurisdiction and that a 2–year effort to locate her had been unsuccessful. It is highly uncertain when or where Ernestine could be found, and for this reason, if for no other, the trial court properly denied the application for a continuance. See *State v. LeBeau*, 306 S.W.2d at 486–87. Further, there is no showing of a request for a subpoena to compel Ernestine's presence. An accused may not complain that his right to compulsory process has been denied when no request for pro-

cess has been made. *State v. Tyler*, 454 S.W.2d 564, 568[6] (Mo.1970). With deference to counsel, the whole argument is simply a makeweight based on a dubious assumption. The point is wholly devoid of merit.

A further point argued by the defendant is that three venirepersons should have been excused because they indicated they would be negatively influenced if the defendant failed to testify. The defendant further argues that the trial court's attempt to rehabilitate these venirepersons by explaining the defendant's right not to testify was improper because the effect of the court's explanation was to coerce the defendant into testifying in his own behalf.

During the voir dire defendant's counsel asked how many members of the panel would "hold it against" the defendant if he did not testify. Venireman Gene L. Hall answered it was "possible" he would do so. Venirewoman Martha Ann Keener stated she thought she would. Venirewoman Lois Powers replied that she would "go by the other testimony," but she thought the defendant should testify. The trial court then explained that the defendant had a right to remain silent and the burden was upon the State to prove his guilt beyond a reasonable doubt. Counsel made no objection to the court's remarks; rather, he commented further upon the defendant's right not to testify, stating broadly that the defendant had "the constitutional right to sit here the whole day, smile, close his eyes, sleep if he wants to, and you cannot hold that against him."

After these statements had been made, defense counsel pursued the subject with venirepersons Hall, Keener and Powers thus:

"[DEFENSE COUNSEL]: The people I believe responded they would hold it against him, that's putting it on the end of the spectrum, was [sic] Mr. Hall, Mrs. Keener and Mrs. Powers.

Mr. Hall, with further discussion, if he doesn't say anything, might you not give him the benefit of the doubt, so to speak, and not hold it against him?

VENIREMAN HALL: Let me say again, and I will try to say it as plain as I did a while ago: if I hear the other testimony and he doesn't say anything in his defense and the only thing I have to weigh is what they have said—

THE COURT: That's a correct statement so far.

VENIREMAN HALL: —and what the instruction the Judge will give us—

THE COURT: At that point, will you make them prove him guilty beyond a reasonable doubt?

VENIREMAN HALL: That would be what I would be expecting, Your Honor.

[DEFENSE COUNSEL]: I guess the question is if he doesn't, and he hasn't said a word—

VENIREMAN HALL: What can I say? Not guilty.

[DEFENSE COUNSEL]: Mrs. Keener?

VENIREMAN KEENER: I think the Judge has made it more clear to me.

[DEFENSE COUNSEL]: So you will not hold it against him?

VENIREMAN KEENER: It would be nice to hear what he said, but I think I would not hold it against him.

[DEFENSE COUNSEL]: Ms. Powers?

VENIREMAN POWERS: I feel the same way. If they can't prove him guilty, I won't hold it against him."

■ A venireperson must be stricken for cause if he indicates he might draw adverse inferences from a defendant's decision not to testify. *State v. Griffin*, 756 S.W.2d 475, 480–81 (Mo. banc 1988), cert. denied, —— U.S. ——, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Holland*, 719 S.W.2d 453, 454–55 (Mo. banc 1986). However, a venireperson who expresses a personal opinion that a defendant should testify or present some evidence in his behalf is not necessarily disqualified as a juror. If it appears reasonable to the trial court that the venireperson's opinion will yield and that he will determine the issues under the law, the venireperson is not subject to being excused for cause. *State v. Griffin*, 756 S.W.2d at 481. The trial court possesses broad discretion in determining whether

the prospective juror is qualified to serve. *State v. Griffin,* 756 S.W.2d at 481.

In the case at hand, venirepersons Hall, Keener and Powers did express personal opinions that the defendant should present evidence in his own behalf. Hall, however, stated that he would expect the State to prove the defendant's guilt beyond a reasonable doubt. As we understand Hall's further answer, it was that if the defendant said nothing, and the State did not show his guilt beyond a reasonable doubt, Hall would find the defendant not guilty. Keener indicated that her personal opinion would yield, and she would not hold the defendant's failure to testify "against him." Her response, "I think," is not equivocal in context. *State v. Griffin,* 756 S.W.2d at 481. Neither was Powers' answer so ambiguous as to disqualify her. There was no abuse of discretion in refusing to excuse venirepersons Hall, Keener and Powers.

■ As noted, the defendant further contends that the trial court's explanation of his right not to testify had the effect of coercing him into testifying. No objection was made at trial nor in the motion for new trial. The point is reviewable only as a matter of plain error. *State v. Jackson,* 768 S.W.2d 614, 615 (Mo.App.1989). As in *Jackson,* some explanation became necessary in this case because of confusion by the venirepersons between their desire to hear the defendant's explanation of his conduct and the State's burden to prove every element of the crimes charged beyond a reasonable doubt. Nevertheless, the court did correctly state the law, and if the language used by the court suggested that the testimony defendant would give would incriminate him, that suggestion was exacerbated by counsel's remarks. The argument is essentially the same argument which was advanced and rejected in *State v. Jackson,* 768 S.W.2d at 615–16[1]. It is without merit in this case as it was there.

The defendant assigns error to the trial of the three informations together. He contends the three charges were improperly consolidated because, while they were of the same or similar character, they were unrelated and did not establish the existence of a common scheme or plan. The State's reply is that there is no constitutional right to be tried on one charge at a time, liberal joinder of charges achieves judicial economy, and the three drug sales were similar in nature and evidence of each sale was relevant to prove the defendant's intent.

The three informations which were tried together were filed on February 4, 1986. By leave of court, amended informations were filed August 18, 1987, and the State moved the court to consolidate the three cases for trial upon the grounds that all three crimes were similar and it would be more convenient and less difficult for the State to try the three cases as one. Over the defendant's objection, the court ordered that the cases be consolidated.

■ The parties are correct in their assumption that Missouri has no statute or rule which explicitly authorizes the trial together of separate indictments or informations against a single defendant. Nevertheless, and while there is authority to the contrary, the general law is that even in the absence of an enabling statute or rule a trial court may, in its discretion and despite the objection of the defendant, consolidate for trial several indictments or informations against the same accused. *Logan v. United States,* 144 U.S. 263, 306, 12 S.Ct. 617, 627, 36 L.Ed. 429, 440 (1892); *Brown v. United States,* 143 F. 60, 66–67 (1906), cert. denied, 202 U.S. 620, 26 S.Ct. 765, 50 L.Ed. 1174 (1906); 2 W. LaFave and J. Israel, Criminal Procedure § 17.3, p. 375 (1984); Annot., 59 A.L.R.2d 841, 847–55 (1958).

Fed.R.Crim.P. 13[2] permits the trial together of two or more indictments or informations charging offenses which might

**2.** Which reads: "The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information.

The procedure shall be the same as if the prosecution were under such single indictment or information." Some states have similar rules or statutes. See, e.g., Kentucky Rule 9.12, which is a rescript of Fed.R.Crim.P. 13.

have been joined in one indictment or information. 1 C. Wright, Federal Practice and Procedure Criminal 2d §§ 211–212, pp. 758–61 (1982). Indictments tried together under Fed.R.Crim.P. 13 are treated as if they were separate counts of one indictment, and the second sentence of the rule provides that the procedure shall be the same as if the prosecution were under a single indictment or information. 1 C. Wright, supra, at p. 759.

The State argues that trial together of several informations against the same defendant is within the intent of § 545.140.2[3] and Rule 23.05[4]. The trial court generally followed the procedure which would have been appropriate if the three informations had been tried together under Fed.R. Crim.P. 13. We are not competent to speak authoritatively to the matter, but we do not find it necessarily erroneous or prejudicial to try several different informations against the same defendant together. Such a trial is analogous to a trial of several counts of a single information together as authorized by Rule 24.07.[5] We are firmly convinced that if separate indictments or informations against the same defendant are to be "consolidated," i.e., tried together, the offenses must be offenses which could have been joined in one indictment or information. *United States v. Halper,* 590 F.2d 422, 428–29[1–4] (2d Cir.1978); 1 C. Wright, supra, at pp. 760–62. Also to be considered is the possibility of confusion or unfair prejudice resulting from the consolidation. *United States v. Halper,* 590 F.2d

at 428; *United States v. Gottfried,* 165 F.2d 360, 363 (2d Cir.1948), cert. denied, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948).

In *State v. Prier,* 561 S.W.2d 437 (Mo. App.1978), this court discussed joinder of offenses in a single information, although former Rule 24.04, which was controlling in that case, was not as broad as present § 545.140.2 or present Rule 23.05. Rule 23.05, which was promulgated after § 545.140.2 was enacted, now defines what offenses may properly be joined in one information. Rule 23.05 permits joinder of all offenses that are of the same or similar character, or based on two or more acts that are part of the same transaction, or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan. It is clear that Rule 23.05 considerably expands the scope of permissible joinder. See *State v. Harris,* 705 S.W.2d 544, 548 (Mo.App.1986).

■ In this case, the State argues that joinder would be proper and consolidation was therefore discretionary because the two sales of cocaine and the sale of marihuana are crimes of a similar character within the intent of Rule 23.05. If, as we have suggested, judicial interpretations of Fed.R.Crim.P. 8(a)[6] are to be considered persuasive, *State v. Prier,* 561 S.W.2d at 439, there is ample authority for the proposition that three charges of selling controlled substances can be joined in a single indictment or information.

**3.** Which reads: "Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Rule 24.07, to which this statute refers, is now Rule 23.05.)

**4.** Which reads: "All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts."

**5.** Rule 24.07 provides, in pertinent part, that "When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately...."

**6.** Which reads: "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In *United States v. Tillman*, 470 F.2d 142 (3d Cir.1972), cert. denied, 410 U.S. 968, 93 S.Ct. 1451, 35 L.Ed.2d 702 (1973), the court upheld joinder of a charge of selling heroin in June 1968 and a charge of selling cocaine in August 1968, stating that the initial joinder was proper since the offenses were " 'of the same or similar character.' " It was further held there was no abuse of discretion in denying separate trials pursuant to Fed.R.Crim.P. 13. *United States v. Tillman*, 470 F.2d at 143. .

In *United States v. Sanders*, 463 F.2d 1086 (8th Cir.1972), the court held it was proper to join counts of dispensing, selling and receiving, concealing and facilitating transportation of narcotic drugs with a charge of distributing a narcotic drug. The first three counts charged offenses allegedly committed on February 10, 1971. The fourth count charged a crime committed eight months later. The court held the joinder was proper under Fed.R.Crim.P. 8(a) because the offenses were " 'of the same or similar character' " and no prejudice resulted from the joinder. *United States v. Sanders*, supra, 463 F.2d at 1089[7-10].

In *United States v. Kellerman*, 432 F.2d 371 (10th Cir.1970), the defendant was charged in four counts with unlawfully transferring marihuana not in pursuance of a required written order in violation of 26 U.S.C.A. § 4742(a). He was also charged, in the same indictment, with: 1) acquiring marihuana without payment of the required tax in violation of 26 U.S.C.A. § 4744(a); 2) two counts of unlawful sale and delivery of LSD in violation of 21 U.S.C.A. § 331(q)(2), and 3) one count of possession of LSD for the purpose of sale contrary to 21 U.S.C.A. § 331(q)(3). The court held, inter alia, that the joinder was within the ambit of Fed.R.Crim.P. 8(a).

In *Dunford v. United States*, 216 F.2d 184 (4th Cir.1954), a physician was charged with 34 counts of violation of the Harrison Anti–Narcotic Act, then 26 U.S.C.A. § 2554. The court held there could be no question but that the joinder was proper under Fed.R.Crim.P. 8(a). *Dunford v. United States*, 216 F.2d at 185.

The cases we have cited are illustrative but other authority exists establishing that when the offenses involved are narcotics transactions, several offenses may be joined in the same indictment or information because the offenses charged are of the same or similar character. See Annot, 39 A.L.R.Fed. 479, 505–07 (1978). We are of the opinion that the offenses with which the defendant was charged could properly have been joined in a single information.

Deciding that joinder was proper is, of course, only the first step in our inquiry. If the offenses charged in separate indictments or informations have been improperly joined, consolidation cannot be ordered. *United States v. Halper, supra*, 590 F.2d at 428–29[1–4]; 1 C. Wright, supra, at pp. 760–62. If consolidation is proper and can be ordered, the court's decision to order joint trial of the separate offenses is discretionary and is reversible only for an abuse of discretion. 1 C. Wright, supra, at p. 763.

■ The defendant's specific objection to consolidation, in this case, is that trial of the three informations together permitted the jury to use evidence of one crime to convict him of the others. The defendant cites *State v. Mitchell*, 491 S.W.2d 292, 295 (Mo. banc 1973), and other cases which hold that proof of separate and distinct crimes is not admissible to prove the defendant's guilt of the crime charged. This argument, however, could be made concerning any joint trial of several similar offenses joined in one information, and our courts have held that severance of offenses properly joined in a single information is a matter within the sound discretion of the trial court. *State v. McCrary*, 621 S.W.2d 266, 272 (Mo. banc 1981); *State v. Inman*, 673 S.W.2d 483, 486 (Mo.App.1984); *State v. Jackson*, 645 S.W.2d 725, 728 (Mo.App. 1982). Our Supreme Court has twice held that in deciding whether a severance should be granted, the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *State v. McCrary*, 621

S.W.2d at 272; *State v. Duren,* 556 S.W.2d 11, 20[13] (Mo. banc 1977), rev'd on other grounds *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Applying the *Duren* criteria, we find that the evidence in this case was not complex. The three acts charged occurred at different times; the evidence as to each was short and simple; there is no reasonable ground for thinking that the jury could not keep separate what was relevant to each. Although a court has a continuing duty during trial to counter prejudice and order severance if necessary to achieve the fair result intended, *State v. McCrary,* 621 S.W.2d at 272, we find no abuse of discretion in the trial court's consolidation of the three informations filed.

As to Appeal Nos. 15489, 15490 and 15491, we find no error in any respect briefed and presented to this court. The convictions are affirmed.

### Appeal No. 16312

■ Appeal No. 16312 is the defendant's appeal from the trial court's denial of his motion for post-conviction relief pursuant to Rule 29.15. The sentences which the defendant has moved to set aside were pronounced prior to January 1, 1988, and the post-conviction proceeding was timely commenced on March 29, 1988. The motion was argued on March 2, 1989, and the motion court denied relief without conducting an evidentiary hearing. The sole assignment of error briefed on this appeal is as diffuse and enigmatic as the points presented on direct appeal, and we therefore set it out verbatim:

"The motion court clearly erred in denying appellant's motion for postconviction relief without granting an evidentiary hearing pursuant to Rule 29.15(g), because the record leaves the firm conviction that a mistake has been made, in that appellant pleaded factual allegations which, if proved, would warrant relief and which are not refuted by the record, since appellant claimed that he received ineffective assistance of trial counsel, due to counsel's failure to call available, named, exculpatory witnesses to testify

at appellant's trial. This claim must be examined in view of matters outside the trial record, so that appellant may question counsel's reasons for not calling these witnesses and counsel may explain his reasons on the record."

An examination of the "argument" part of the defendant's brief suggests that he intends to claim he did not receive the effective assistance of counsel because his trial attorney did not subpoena witnesses who would have provided him with a defense. Specifically, the defendant contends his trial attorney should have subpoenaed Roxie Anderson, Jerome Bell, Ocie Hampton, Rosie Townsend and Sylvester Smith.

Apparently anticipating the defendant's contention that a valid defense had been neglected, trial counsel made the following record at the close of the State's case-in-chief:

\*　　\*　　\*　　\*　　\*　　\*

"[DEFENSE COUNSEL]: Secondly, at your request, we have been over this last week and earlier today, you had me subpoena Percy Visor, Jerome Bell, Ocie Hampton, Tommy Lawrence, Arnell Spears, Sylvester Smith, Danny Hart and Stephon Peterson as witnesses in this case; is that correct?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: Last week, we released and did not request a subpoena on Rosie Townsend; correct?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: The other witnesses are here today, and in your presence part of the time, I have discussed their testimony in your case with them; correct?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: And I have specifically advised you, after meeting with those witnesses two or three times today, that I don't feel that they should testify in this case; is that correct?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: And are you now in agreement with me that you are willing to follow my advice in this in-

stance that we should call no witnesses other than yourself?

THE DEFENDANT: Yes, sir.

\* \* \* \* \* \*

[DEFENSE COUNSEL]: I would even leave the courtroom if you wanted. Is there anything you would like to say without [my being present]?

THE DEFENDANT: No, sir."

\* \* \* \* \* \*

We conclude the motion court properly denied relief without holding an evidentiary hearing. The record refutes the defendant's contention that his trial counsel refused to call exculpatory witnesses. When, as here, the record shows conclusively that the movant is not entitled to relief, the motion for post-conviction relief may and should be denied without an evidentiary hearing. Rule 29.15(g); *Flowers v. State*, 632 S.W.2d 307, 313–14 (Mo.App.1982). The judgment denying post-conviction relief is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.