**STATE of Missouri, Respondent,**

v.

**Steven C. BOTTS, Appellant.**

**No. WD 62767.**

Missouri Court of Appeals, Western District.

Oct. 26, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2004.

Kent Denzel, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty Gen., Deborah Daniels, Andrea K. Spillars, Leslie E. McNamara, Jefferson City, for Respondent.

Before RONALD R. HOLLIGER, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, Judge.

Steven C. Botts appeals his conviction following a jury trial of possession of a controlled substance with the intent to distribute, section 195.211, RSMo 2000. He was sentenced as a prior and persistent offender to twenty years imprisonment. Mr. Botts asserts three points on appeal. He claims that (1) the State failed to prove beyond a reasonable doubt that he possessed the marijuana found in the master bedroom during the search of his residence, (2) the trial court committed plain error in permitting the chief of police of Eldon to testify that a confidential informant told him that Mr. Botts was selling marijuana from his home, where he kept the controlled substance, and in allowing a law enforcement officer to state that a person present at the home of Mr. Botts when the search was conducted told him that he did not live there, and (3) the trial court abused its discretion in refusing to allow him to cross examine a law enforcement officer about whether he contacted the officer after the incident and whether the officer asked him to make drug buys for him.

The judgment of conviction is reversed.

### Trial Evidence Favorable to the Verdict

Eldon Chief of Police Bob Hurtubise received information on May 6, 2002, that Mr. Botts was selling marijuana from his residence and that he maintained a large quantity of the controlled substance there.

Chief Hurtubise obtained a search warrant and with two Eldon police officers and Jonathan Lawrence, then a law enforcement officer narcotics investigator with the Lake [Ozark] Area Narcotics Enforcement Group, executed the warrant the same afternoon. Mr. Botts resided in a trailer located within Eldon. The principal entrance to the trailer provided ingress to the living room, with the contiguous kitchen area identified as being to the north of the living room. A hallway permitted access to the rear of the trailer to the south where the large bedroom was located. A second access door to the trailer was located in the master bedroom. The hallway between the living room/kitchen area and the master bedroom provided access to two other rooms and to the single bathroom. One of the rooms served as a bedroom for Mr. Botts' fourteen-year-old daughter and her female cousin who was residing with Mr. Botts and his daughter when the warrant was executed. The second room served as a laundry room and was also used to store items.

Four law enforcement officers executed the search of the trailer where Mr. Botts lived on May 6, 2002. Chief Hurtubise and Jonathan Lawrence were the State's law enforcement witnesses. Their testimony was that when the law enforcement officers knocked at the entrance to the trailer, Mr. Botts opened the door to permit their entry. Which law enforcement officer first entered the trailer and when the remainder of the officers followed are confusing from the record. Officer Lawrence testified that when he entered the trailer, he looked down the hallway of the trailer and observed a man, necessarily Charlie Noland, on the bed in the master bedroom. Chief Hurtubise testified that after he entered, he observed Charlie Noland either standing or sitting on the couch in the living room. Because the testimony of the two state's witnesses may conflict as

to Mr. Noland's location when the officers entered the trailer, Officer Lawrence's testimony about where he saw Mr. Noland upon his entry into the trailer is not favorable to the verdict and is rejected. Significant, however, is that Mr. Noland was in the trailer. Officer Lawrence testified that Charlie Noland told him that he did not live in the trailer. Mr. Botts' daughter and niece were in the bathroom when the law enforcement officers entered the trailer, and his daughter was taking a bath. The two girls were ushered into their bedroom to change, after which, all four persons remained in the living room with Chief Hurtubise while the other officers conducted the search.

A large plastic bag was found in the master bedroom that contained six other plastic bags. Four of the six smaller bags contained marijuana, all of which weighed 161.87 grams. Syringes were found in a black bag located under the bed in the master bedroom and a wooden box containing plant seeds was also found on a television stand in the same bedroom. The chemist did not testify about these items. Clothing was observed in the master bedroom that appeared to belong to a man. A smaller bag containing what may have been marijuana was found outside the trailer window of the bedroom Mr. Botts' daughter and her cousin occupied, but the drug chemist who testified for the prosecution did not testify about this substance either.

Mr. Botts was charged by amended information with possession of a controlled substance with intent to distribute. Following a jury trial, Mr. Botts was convicted of the charge and sentenced as a prior and persistent offender to twenty years imprisonment. This appeal followed.

### Point One

Mr. Botts claims as his first point on appeal that the trial court erred in overrul-

ing his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to prove beyond a reasonable doubt that he possessed the marijuana found in the residence. He asserts that the marijuana was located in the room used by Mr. Noland and that the evidence failed to prove that he knew of its presence and that he exercised control over it.

## Standard of Review

In considering a challenge to the sufficiency of the evidence, the reviewing authority accepts as true all evidence and its reasonable inferences in a light most favorable to the verdict and rejects all contrary evidence and inferences. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993) (citation omitted). A determination is made whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence. *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc), *cert. denied,* 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997); *State v. Goddard,* 34 S.W.3d 436, 438 (Mo.App. W.D.2000). This same standard of review applies when reviewing a motion for a judgment of acquittal. *Goddard,* 34 S.W.3d at 438.

## Discussion

■■■ The elements of the offense of possession of marijuana with intent to distribute, section 195.211, RSMo 2000, require that the State prove that Mr. Botts possessed more than five grams of marijuana and that he knew of its presence and illegal nature. § 195.211, RSMo 2000; *State v. Barber,* 635 S.W.2d 342, 343 (Mo. 1982). To sustain a conviction for possession of a controlled substance, the State must prove that Mr. Botts knowingly and intentionally possessed the proscribed substance. Conscious, intentional possession, either actual or constructive, must be established. *Barber,* 635 S.W.2d at 343. The State must also show that the defendant was aware of the presence and nature of the substances in question, and both possession and knowledge may be proved by circumstantial evidence. *Id.* If actual possession has not been shown, "constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.* (quoting *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977)). Although exclusive control of the premises where controlled substances are found raises an inference of possession and control of those substances, if the premises are jointly controlled, some further evidence is necessary to connect the accused with the drugs. *Id.* at 343–44. "The presence of large quantities of a controlled substance may buttress such an inference if consistent with the totality of circumstances." *Id.* at 344.

Mr. Botts did not have actual possession of the contraband marijuana when law enforcement authorities found the substance on May 6, 2002. Thus, to convict Mr. Botts of the crime of possessing the marijuana for the purpose of distributing it, the prosecution must have presented sufficient evidence for the jury to find that he constructively possessed the substance. Constructive possession may be shown by circumstantial evidence. *State v. Booth,* 11 S.W.3d 887, 891 (Mo.App. S.D.2000)(quoting *State v. Powell,* 973 S.W.2d 556, 558 (Mo.App. W.D.1998)). The question, therefore, is whether sufficient evidence was presented by which a reasonable juror could find beyond a reasonable doubt that Mr. Botts constructively possessed the marijuana found in the master bedroom during the May 6, 2002, search of the

trailer. To prove constructive possession, however, the State had to prove that he consciously and intentionally possessed the substance.

■ The Supreme Court of Missouri addressed constructive possession in *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992), and stated:

[P]roof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found. Defendant's *exclusive* control of the premises is enough to raise an inference of possession and control of the substance. *Joint* control of the premises, however, requires some further evidence or admission connecting the accused with the illegal drugs. It follows that merely being a guest in the premises of another where drugs are found is not sufficient to sustain a conviction for possession of controlled substances. The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control. (Internal citations omitted)

The additional evidence required when joint access by several persons to the location where contraband drugs are found includes such things as: "routine access to an area where controlled substances are found; the presence of large quantities of the substances at the scene where the accused is arrested; conduct and statement made by the accused, and a mixture of defendant's personal belongings with the substance." (Internal citations omitted). *State v. Buford*, 907 S.W.2d 316, 318 (Mo.App. E.D.1995).

In *Buford*, the defendant was charged with possessing cocaine (count 1), unlawful use of paraphernalia (count 2), and possession of over 35 grams of marijuana (count 3). The court stated that because the defendant did not have actual possession of any of the items for which he was charged, the State was compelled to prove constructive possession in each of the three counts. *Id.* at 318–19. The court noted that the defendant was the only person in the apartment when the search warrant was executed that produced the illegal substances for which the defendant was charged. He had routine access to the bedroom where the cocaine was found. The bed in the bedroom appeared as if the defendant had been laying on it, and a TV was turned on. The defendant acknowledged sleeping in the room where the cocaine was found. He admitted to paying rent or at least half the rent for the apartment and the telephone service. His personal belongings were mingled with the cocaine that was found. Various documents with his name on them, including a work I.D. badge, a sportsmanship award, and a receipt were found on the dresser with the cocaine. *Id.* at 318. The court determined that sufficient evidence was presented from which the trier of fact could determine that the defendant constructively possessed the cocaine. *Id.*

The court in *Buford* determined that sufficient evidence was presented to prove constructive possession of the drug paraphernalia charge, too. The drug paraphernalia were found in the sink during the search. The court noted that the defendant had routine access to the kitchen. *Id.* at 318–19. He acknowledged the presence of the scale under the sink. He had routine access to the living room where agents seized a razor blade with a small piece of crack cocaine and a glass vial. His personal items were mixed with the drug paraphernalia. A cardboard box with clothes on top of it and a glass test tube with crack cocaine residue in it were found in his bedroom closet. He told

agents that the test tubes were used to cook crack cocaine. *Id.* at 319.

Finally, the defendant in *Buford* was found by the court to have constructively possessed the marijuana found as a result of the search. Although the marijuana was found in a spare room in which a TV was located, the court determined that evidence was presented that the defendant was the only person living in the apartment. He was asked how to contact the person he claimed shared the apartment with him, and he declined to provide the information saying, "It's my apartment. The drugs were found in my house. And there is no need to, you know, hassle him." *Id.* The court noted that the admission was sufficient by itself to support the conviction regarding the marijuana. *Id.*

Mr. Botts' first point on appeal includes the assertion that the evidence showed that the contraband was found in the master bedroom, which was used by Mr. Noland, and the State failed to prove that he, Mr. Botts, possessed it. Mr. Botts claim is based in part on the testimony of his daughter that Mr. Noland resided in the trailer and occupied the master bedroom. Testimony from Mr. Botts' daughter was that Mr. Noland was the adult brother of Mr. Botts' best friend, who had been killed circa 1997. She testified that Mr. Noland was residing with the Botts and paying Mr. Botts rent when the search occurred. He had moved into the trailer a week or two before the search, and he occupied the master bedroom, she said. She said that her father kept his clothes in the laundry/storage room and slept in the living room on a mattress that was placed on his daughter's bed in the daytime. She testified that even before Mr. Noland moved into the trailer, her father slept in the living room because the master bedroom was hot and an air conditioner kept the living room cool. Mr. Botts' daughter also testified that Mr. Noland routinely locked the master bedroom door, and he had access to the outside through another door that allowed entry directly into the master bedroom. She also testified that Mr. Noland moved from the trailer the day after Mr. Botts' arrest.

Examining the evidence in the light most favorable to the prosecution requires rejecting the testimony of Mr. Botts' daughter that Mr. Noland lived in the master bedroom as well as Officer Lawrence's testimony that he observed Charlie Noland alone on the bed in the master bedroom, the room in which the marijuana was found, when he entered the trailer. Even disregarding this evidence, however, undisputedly Mr. Noland was present in the trailer when the search occurred, as were Mr. Botts' daughter and her cousin. Thus, three people were present in addition to Mr. Botts. Unlike *Buford*, Mr. Botts was not the only person living in or occupying the apartment. Joint control of the premises requires additional evidence or admission connecting the accused with the illegal drugs. *Purlee*, 839 S.W.2d at 588. The State must present some incriminating circumstance that implies that the accused knew of the presence of the drugs and that the same were under his control. *Id.* Thus, something more than Mr. Botts' ownership of the trailer and his presence in the living room of the trailer when the search occurred was required to prove that he constructively possessed the contraband substance found in the master bedroom.

The evidence upon which the State relies for sustaining the conviction is that men's clothing was found in the master bedroom, Mr. Botts owned the trailer, and he was in the living room of the trailer when the controlled substance was found. Neither witness ever saw Mr. Botts in the master bedroom. To prove that Mr. Botts had constructive possession of the con-

trolled substance found in the master bedroom, the State had to offer evidence that he knew of the presence of the drugs and that the same were under his control. *Id.* Mr. Botts' ownership of the trailer, the presence of men's clothing in the master bedroom and his presence in the living room, under the circumstances of this case, are insufficient to reasonably infer that the men's clothing found in the master bedroom was his. No evidence was presented to demonstrate that the clothing was Mr. Botts', not even that the size of the clothing was the same worn by Mr. Botts. Neither were personal objects, writings, documents, mail, or any other items that may have been located in the room, which could be shown to belong to Mr. Botts, were offered as evidence that Mr. Botts accessed the master bedroom. Furthermore, the amount of controlled substance (161.87 grams) was not so great that one could reasonably infer from its mere presence that Mr. Botts would know of its presence and, thus, constitute a factor in determining constructive possession of it.

The constructive possession rule requires more evidence than was presented to prove beyond a reasonable doubt that Mr. Botts knowingly possessed the contraband substance constituting the basis for the charge. Points two and three need not be addressed. The judgment of the trial court is reversed.

RONALD R. HOLLIGER, P.J. and EDWIN H. SMITH, J. concur.