**STATE of Missouri, Respondent,**

v.

**Larue L. McQUARY, Appellant.**

**No. WD 64730.**

Missouri Court of Appeals,
Western District.

Oct. 18, 2005.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shawn Naccarato, Assistant Attorney General, Jefferson City, MO, for respondent.

Ellen H. Flottman, Assistant Public Defender, Columbia, MO, for appellant.

Before HOWARD, P.J., and SMART and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Larue L. McQuary appeals his conviction of the class A felony of distribution of a controlled substance within 2,000 feet of a school in violation of section 195.214,[1] for which he was sentenced as a prior and persistent drug offender to twenty-five years imprisonment. In his appeal from the judgment entered upon his conviction, McQuary raises two points. Prior to considering McQuary's points on appeal, we must consider his motion for remand that was taken with the case.

### Motion for Remand

McQuary has filed a motion for remand based on evidence of alleged juror misconduct he discovered subsequent to filing this appeal. He seeks a remand based on allegations that one of the jurors failed to disclose that he knew one of the State's witnesses.

In support of his motion for remand, McQuary states that Daniel Woods, who was later selected to serve on the jury, did not respond when the venire panel was

---

1. Statutory references are to the Revised Statutes of Missouri, 2000.

asked during voir dire if they knew any of the witnesses, including Justin Berry. Berry testified for the State at McQuary's trial that he went to McQuary's home on March 28, 2003, to exchange property that James Foote had given him for at least $100 worth of crack cocaine from McQuary. McQuary took the property and gave Berry the crack cocaine in return. Berry then left McQuary's house, returned to his car, and smoked the crack cocaine with Foote. The jury convicted McQuary of distribution of a controlled substance within 2,000 feet of a school.

After the time for filing a motion for new trial had expired and McQuary had filed his appeal with this court, McQuary obtained an affidavit from Joshua Huffman, which states, in relevant part:

I, Joshua L. Huffman, do hereby profess that I know for sure that juror Daniel ("Danny") Woods and witness Justin Berry knew each other at the time of LaRue McQuary's trial on June 30, 2004. In fact I've taken Danny along with me over to Justin's home—when he lived at 813 W. Rollins—several (at least three) times on visits, we were all recreational buddies in 2002. So Danny and Justin knew each other pretty well, and I'm willing to testify to this—if need be.

McQuary asks that we use our inherent power to remand to the trial court to allow him to file, out of time, a motion for new trial based on this evidence of juror Woods' misconduct. *See State v. Jackson,* 925 S.W.2d 856, 860 (Mo.App. W.D.1996) (recognizing "[a]n exception to the time limitations of Rule 29.11(b) ... where an appellate court, in its discretion, determines that its inherent power must be exercised to remand a case for the trial court to consider whether a new trial should be granted on the basis of newly discovered evidence in order to prevent a miscarriage of justice").

In *State v. Davis,* 698 S.W.2d 600, 603 (Mo.App. E.D.1985), the Eastern District discussed its opinions in *State v. Mooney,* 670 S.W.2d 510 (Mo.App. E.D.1984), and *State v. Williams,* 673 S.W.2d 847 (Mo. App. E.D.1984). *Mooney,* 670 S.W.2d at 515–16, and *Williams,* 673 S.W.2d at 848, first recognized the above-described discretionary jurisdiction of the appellate courts to remand a cause to the trial court for consideration of a motion for new trial based on newly discovered evidence. *Davis* explained the exceptionally narrow scope of those holdings as follows:

A careful reading of those cases reveals that they involved exceptional circumstances and are thus limited. Furthermore, it is clear that remand is not mandated in cases involving allegations of newly discovered evidence after appeal. A case will only be remanded on the basis of newly discovered evidence after appeal where the court, *in its discretion,* determines that its inherent power must be exercised in order to prevent a miscarriage of justice.

698 S.W.2d at 603. In *McCauley v. State,* 866 S.W.2d 892, 894 (Mo.App. E.D.1993), the Eastern District further explained:

The facts of *Williams* and *Mooney* were extremely unique. In both cases, the defendants had newly discovered evidence which would completely exonerate them of the crime for which they were convicted. *Williams,* 673 S.W.2d at 847; *Mooney,* 670 S.W.2d at 512 (only evidence against the defendant was testimony later recanted). A failure to present that evidence in a motion for new trial would have resulted in a serious miscarriage of justice.

The aforementioned cases involved newly discovered evidence tending to completely exonerate the defendants, not new-

ly discovered evidence of juror misconduct, as alleged here. The only case discovered by this court concerning a remand upon newly discovered evidence of juror misconduct is *State v. Post*, 804 S.W.2d 862 (Mo. App. E.D.1991). In *Post*, the Eastern District stated at the outset that it had previously exercised its discretion and granted the defendant's motion to remand for new trial by reason of newly discovered evidence of serious juror misconduct. *Id.* at 862. The actual issue in *Post* involved the proceedings that occurred after that remand, i.e., the State appealed from the trial court's judgment granting a new trial after the trial court made findings of serious juror misconduct on remand. *Id.* The Eastern District agreed with the trial court that substantial evidence supported the trial court's finding of prejudicial juror misconduct. *Id.* at 863. The misconduct resulted from "outrageous" conduct by law enforcement in interacting with the sequestered jury, which conduct included unauthorized socializing with the jurors and sexual contact between an alternate juror and a deputy sheriff not assigned to the jury. *Id.* at 862–63. In agreeing with the trial court that a new trial was warranted, the Eastern District concluded, "[n]o one should be on trial for any crime, much less murder, in such a lackadaisical atmosphere." *Id.* at 863.

McQuary argues that as in *Post*, the evidence of juror Woods' misconduct requires that this cause be remanded for a new trial. We disagree. *Post* involved evidence of egregious juror misconduct. This case does not involve such exceptional circumstances as to warrant the exercise of our inherent discretion to remand the case back to the trial court. The only evidence McQuary offers in support of his motion for remand is an affidavit from Joshua Huffman, which has no proof of credibility, and the information revealed does not exonerate McQuary. Huffman's affidavit does little more than to mention that sometime in 2002, two years before McQuary's trial, he took juror Woods with him to Berry's house on at least three occasions. Even if we assume Huffman's statements are true, we can conjecture several different scenarios in which juror Woods could have been completely truthful when he did not respond when the venire panel was asked during voir dire whether anyone knew Justin Berry. For example, Woods may have never known Berry by name, Woods may have known Berry by another name, or Woods may not have recalled meeting Berry due to the lapse of time. Moreover, Berry's testimony was not the only testimony offered at McQuary's trial concerning the exchange of property for cocaine that occurred at McQuary's residence. James Foote also testified about the transaction. It was Foote's property that Berry exchanged with McQuary for the cocaine. Foote used Berry as a "go-between," because McQuary "wouldn't deal with him. He would deal with Justin. He knew Justin."

We are not convinced that a serious miscarriage of justice will result if we do not exercise our discretion to remand to the trial court for its consideration of this information in a motion for new trial. McQuary's motion for remand is denied.

### Point I

■ McQuary argues in his first point on appeal that the trial court erred in overruling his motion for acquittal at the close of all the evidence and in sentencing him, because the State failed to prove beyond a reasonable doubt that McQuary knew his residence was within 2,000 feet of school property, which is required to establish a violation of section 195.214.

■ When reviewing a motion for judgment of acquittal, we apply the same stan-

dard of review as the standard used in reviewing a challenge to the sufficiency of the evidence. *State v. Botts*, 151 S.W.3d 372, 375 (Mo.App. W.D.2004). We must determine "whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence." *Id.* In so reviewing, we "accept[ ] as true all evidence and its reasonable inferences in a light most favorable to the verdict and reject[ ] all contrary evidence and inferences." *Id.*

The State charged McQuary with distribution of a controlled substance near schools—specifically, Moberly Area Community College, a public junior college—in violation of section 195.214. Section 195.214.1 provides, in relevant part:

> [a] person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person ... within two thousand feet of, the real property comprising a ... public or private junior college[.]

"Section 195.214 acts as a 'penalty enhancement' provision, and it does not create a separate crime. Section 195.214 incorporates the elements of § 195.211 and adds the additional requirement that defendant's actions take place within 2000 feet of a school." *State v. White*, 28 S.W.3d 391, 396 (Mo.App. W.D.2000) (citations omitted). Section 195.211.1, pro-

vides, in relevant part, that "it is unlawful for any person to distribute ... a controlled substance." Thus, the trial court instructed the jury, pursuant to MAI–CR 3d 325.30, that if it believed beyond a reasonable doubt:

> First, that on or about March 28, 2003, ... [McQuary] distributed cocaine, a controlled substance, to Justin Berrey [sic], and
>
> Second, that [McQuary] did so within two thousand feet of the real property comprising Moberly Area Community College, a public junior college,
>
> and
>
> Third, that with regard to the facts and circumstances submitted in this instruction, [McQuary] acted knowingly,

then it could find McQuary guilty of distributing a controlled substance near schools.

■ McQuary disputes only the evidence concerning his knowledge that there was a school within 2,000 feet of his residence.[2] "A person 'acts knowingly', or with knowledge, ... [w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist[.]" § 562.016.3; *see White*, 28 S.W.3d at 396 (citing section 562.016.3 in explaining, "in order for a defendant to be found guilty under either § 195.214 or § 195.[2]11, he must have acted purposely or knowingly"). "Knowledge may be prov-

**2.** McQuary did not challenge any of the evidence regarding the junior college's proximity to his residence at trial. Rather, in his motion for acquittal, McQuary only generally argued that the State failed to make a submissible case. Then, in arguing the motion, McQuary claimed only that the State failed to prove that the substance allegedly distributed was cocaine. This specific issue now before this court was not raised before the trial court, so we could summarily deny McQuary's point because the issue has not been preserved. *See State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999) ("The defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments on appeal."). Nevertheless, we review the issue *ex gratia*.

en by circumstantial evidence." *White*, 28 S.W.3d at 396.

In support of his argument, McQuary argues that the evidence offered by the State regarding his knowledge of the school was similar to the evidence that we found insufficient in *White*, 28 S.W.3d at 397. We disagree.

In *White*, the State's sole evidence of the 896–foot distance between the residence from which the defendant distributed the controlled substance and the school was a computer-generated map. *Id.* The map depicted, without any indication of whether it was drawn to scale, the distance from the residence where the alleged distribution occurred to the edge of the school. *Id.* White did not challenge the computed distance between the residence and the school, but he argued the evidence was insufficient "to establish that he knowingly delivered the controlled substances within 2000 feet of a school." *Id.* at 396. In agreeing with White, we explained:

> [T]he map does not indicate the topography of the area, the visibility from the residence to the school, or a complete picture of the access to the residence from roads or streets that do or do not pass by the school.
>
> The only other evidence the State presented on this issue was the testimony of Detectives Browning and Buente that the residence was within 2000 feet of the school but this was based solely on their observation of the map. There was no evidence regarding the size and height of the school building(s), how many blocks away the school is from the residence, and whether the school is visible from the residence. The State failed to show that White had ever seen the school, had ever traveled past the school, or had heard about the school's location. From the record, there is nothing from which the jury could rea-

sonably infer whether the school was a highly visible large complex, or a single classroom in the basement of a residential building.

> The map and the related testimony are simply insufficient to establish that White knew about the school. The State needed to present some additional evidence to establish that White was knowingly distributing or delivering a controlled substance within 2000 feet of a school. Evidence that the school premises was a large complex, with one or more large and highly visible buildings, and that normal ingress and egress from the residence would have taken White by the school, would have permitted an inference that he had knowledge of the location and distance of the school. There was no such evidence. Testimony that the buildings depicted on the map were drawn to scale, and describing the appearance of the buildings, could have given the jury a basis for forming a reasonable inference that White had knowledge of the location of the school. There was no such testimony. The map, which was in essence the only evidence the State presented on this issue, in and of itself, was insufficient to establish that White *knowingly* distributed a controlled substance within 2000 feet of a school. For the jury to conclude, as was necessary for it to convict, that the sale occurred within 2000 feet of a school would have required it to engage in mere speculation. Accordingly, we must hold that the evidence was insufficient to support White's conviction on those charges.

*Id.* at 397.

At McQuary's trial, the State produced just the type of evidence that we found lacking in *White*. For example, the State presented a photograph, which was taken from the street right outside McQuary's

residence, that showed Moberly Area Community College, a large, two-story building with the words "JUNIOR COLLEGE" clearly visible above the grand-columned entrance, just at the end of West Rollins (the street McQuary lived on). The State also presented a photograph of McQuary's residence, which was taken from the same location in the street. It appears from the photo of the junior college that the school is just down the block from McQuary's residence. Berry testified that he had lived next door to McQuary in the same duplex. Berry identified the view in the photo taken from McQuary's residence of Moberly Area Community College. Detective John Johnson also identified the photograph taken of the highly visible junior college. Detective Johnson personally measured the 1,581–foot distance from the front door of McQuary's residence to Moberly Area Community College.

McQuary acknowledges the photographs, but he argues "there was no evidence that a person would realize that a lengthy street would run less than 2000 feet. To convict [him] of knowingly selling cocaine within 2000 feet of the school would have required the jury to engage in mere speculation." We disagree. Given the close proximity of McQuary's residence and Moberly Area Community College clearly evidenced by the photographs, the testimony concerning the location of the junior college, and Detective Johnson's personal measurement of the 1,581–foot distance from the residence to the junior college, the jury could conclude beyond a reasonable doubt that McQuary had the requisite knowledge that Moberly Area Community College was less than 2,000 feet from his residence.

Point I is denied.

## Point II

In McQuary's second point on appeal, he claims that the trial court erred in joining a possession of cocaine charge with the distribution of cocaine within 2,000 feet of a school charge.

On April 2, 2004, the State filed a motion for joinder/consolidation, seeking to join a possession of cocaine charge with charges of distribution of cocaine and receiving stolen property in exchange for cocaine. The latter two charges resulted from the facts set forth in our discussion above, in which Berry exchanged property alleged to be fraudulently obtained by Foote for McQuary's crack cocaine. The possession charge resulted from another event, which occurred later the same day. In its motion, the State explained, in relevant part:

1. [McQuary] was originally charged, in one Complaint ..., with the events now sought to be consolidated. Each of the three counts is alleged to have occurred "on or about March 28, 2003." One count charges [McQuary] with *distribution* of cocaine, one count originally charged [McQuary] with distribution— later amended to *possession*—of cocaine, and the third charges [McQuary] with receiving stolen property *in exchange for* cocaine.

What is now the possession count was dismissed at the initial preliminary hearing because the testimony of [McQuary]'s then co-defendant was required to bind over the charge. The State refiled that count, which charge was bound over following preliminary hearing on March 9, 2004. The State merely wishes to have that count "catch-up" with the other charges filed.

2. The State believes the evidence at trial will be that Defendant is a "crack dealer." Two individuals were arrested after "fencing" property purchased with a stolen credit card to Defendant in

exchange for cocaine. A search warrant was issued for Defendant's residence. The warrant was served on March 28, 2003 and resulted in seizure of items including a spoon found in Defendant's bedroom with cocaine residue on it. Approximately one hour later, Defendant was requested to appear at the Probation and Parole office. Defendant was driven to the P & P by Diana Davis. It is expected Ms. Davis will testify that Defendant handed her a bag of cocaine and told her to hang on to the cocaine while he went into the P & P office. Ms. Davis was stopped upon returning to P & P to pick up Defendant and found to be in possession of the cocaine. She subsequently gave a statement implicating Defendant with this possession.

The trial court granted the motion for joinder after a hearing. On June 23, 2003, a week before trial, the State filed a First Amended Information, which charged McQuary with: Count I—distribution of cocaine within 2,000 feet of a school; Count II—receiving stolen property; and Count III—possession of a controlled substance (cocaine). Just prior to trial, the State filed a *nolle prosequi* on Count II.

In McQuary's second point on appeal, he argues that the trial court abused its discretion in overruling his counsel's objection to joinder of the possession of controlled substance (cocaine) charge with the charge of distribution of cocaine near schools for purposes of trial.

 There is no constitutional right to be tried for one offense at a time. *State v. Hemme*, 969 S.W.2d 865, 869 (Mo.App. W.D.1998). Before addressing the propriety of joinder, we point out that the issues of joinder and severance "are separate and distinct issues for appellate review." *State v. Warren*, 141 S.W.3d 478, 486 (Mo.App.

E.D.2004). "Joinder deals with the issue of what crimes can be charged in a single proceeding, while severance assumes that joinder is proper and leaves to the discretion of the trial court the determination of whether prejudice may result if charges properly joined were tried together." *Id.* McQuary's discussion of the trial court's abuse of its discretion goes to the issue of severance. However, it does not appear from the record on appeal that McQuary ever filed a written motion to sever pursuant to Rule 24.07, nor did he argue the issue before the trial court. Accordingly, we limit our review to the propriety of joinder and do not address any issue of severance.

As we explained in *Hemme*, 969 S.W.2d at 869:

> Section 545.140.2 and Rule 23.05 provide that two or more offenses may be joined if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Joinder of offenses is either proper or improper under the law. Joinder is proper if any one of the criteria in § 545.140.2 exists. Liberal joinder of criminal charges is favored for the sake of judicial economy. We consider only the State's evidence in determining whether joinder was proper.

(Citations omitted.)

 The propriety of joinder is fact dependent. Most of the case law in Missouri discussing the "same or similar character" rationale for joinder has dealt with whether "similar tactics" were used in the commission of the crimes sought to be joined. *See, e.g., State v. Kelley*, 953 S.W.2d 73, 80 (Mo.App. S.D.1997)[3] (ex-

---

3. *Kelley* has been overruled, in part, on other grounds by *Deck v. State*, 68 S.W.3d 418, 427

plaining that the "seminal case" of *State v. Harris*, 705 S.W.2d 544, 549–50 (Mo.App. E.D.1986), and cases citing thereto "simply stand for the proposition that a showing of similar tactics is sufficient reason for joinder of offenses under the same or similar character rationale; they do not, however, hold that similar tactics *must* exist before joinder is permissible under the same or similar character standard"). In *State v. Anderson*, 785 S.W.2d 299, 305–06 (Mo. App. S.D.1990), the Southern District extensively considered cases illustrating what is meant by "same or similar character" of offenses for purposes of joinder. The Southern District considered judicial interpretations of Federal Rule of Criminal Procedure 8(a) persuasive in concluding that there was ample authority allowing for joinder of the narcotics offenses of sale of cocaine and sale of marijuana because those offenses were of sufficiently "similar character." *Id.* at 306. While we do not feel it is necessary to discuss in detail each of the cases discussed and relied on in *Anderson*, we find the reasoning therein persuasive to allow joinder of the possession and distribution of cocaine charges against McQuary, because the offenses were of sufficiently similar character.

The charges were properly joined. Again, we do not consider the issue of severance. Point II is denied.

### Conclusion

For the foregoing reasons, we (1) deny McQuary's motion for remand; (2) hold that the trial court did not err in overruling McQuary's motion for acquittal because the evidence was sufficient for the jury to find beyond a reasonable doubt that McQuary knew his residence was within 2,000 feet of school property as required to establish a violation of section

(Mo. banc 2002).

195.214; and (3) hold that the distribution of cocaine within 2,000 feet of a school and the possession of cocaine charges were properly joined. Accordingly, we affirm the trial court's judgment.

SMART and NEWTON, JJ., concur.