Larue McQUARY, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 67201.

Missouri Court of Appeals,
Western District.

Dec. 26, 2007.

Mark Allen Grothoff, State Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang, Robert J. (Jeff) Bartholomew, Office of Atty. Gen., Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

In this appeal we are required to determine whether a post-conviction motion, which alleges that a juror intentionally failed to disclose a close personal relationship with the State's principal witness, states a claim that a resulting conviction "violates the constitution and laws of this state or the Constitution of the United States" within the purview of Rule 29.15(a)

or raises mere trial error not cognizable in a post-conviction proceeding. Following an evidentiary hearing, the motion court denied various claims of ineffective assistance of counsel on the merits and concluded that the claim of intentional non-disclosure by a juror could not be litigated in the Rule 29.15 motion.

We find that the particular facts of this case establish rare and exceptional circumstances and that fundamental fairness requires that they be considered. *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997). The judgment is, therefore, affirmed in part and reversed in part for the motion court to make findings of fact and conclusions of law about the juror non-disclosure issue.

### Factual and Procedural Background

Larue McQuary ("McQuary") was charged, tried, and convicted of distributing a controlled substance near a school. Justin Berry ("Berry") was a crack addict who was a friend of another addict, James Foote ("Foote"). Foote received some property though a fraudulent credit card purchase, which he asked Berry to trade with McQuary for crack cocaine. Berry testified that he completed the trade at a house McQuary lived in near Moberly Community College. Later Berry was arrested for receiving stolen property and Foote was arrested for fraudulent use of the credit card. Berry told police about purchasing crack from McQuary, and Foote confirmed that he gave some personal property to Berry to exchange for crack. Berry received a suspended imposition of sentence in exchange for his agreement to cooperate in the case against McQuary. He and Foote were the principal witnesses against McQuary at trial although Foote did not know McQuary, had no personal contact with him, and did not witness the trade.

The jury for McQuary's trial was selected from a venire panel consisting of 45 persons. In response to a question during voir dire, several venire-members indicated that they knew McQuary. One venire-member, Kenneth Cleeton ("Cleeton"), stated, "I know him through law enforcement." In response to follow-up questions, Cleeton elaborated that he is retired from a twenty-five-year career in law enforcement and that, although he is not personally acquainted with McQuary, he "just know[s] of him through law enforcement."

The venire panel was then asked whether they knew any of the witnesses expected to testify, including Berry. Several venire-members responded to those questions, including a woman who reported that she is a high school teacher and that she thought Berry "was one of [her] students in the past." The venire-members were also asked whether they had ever been charged with a crime. Two members of the panel reported that they had been charged with crimes, including one man who indicated that he had been charged, sixteen years earlier, with being a minor in possession of alcohol.

Daniel Woods ("Woods"), who ultimately served on the jury, did not respond to any questions asked during voir dire.

During trial, it came to the attention of the trial court that courthouse staff had overheard a conversation outside the courtroom. During a recess, the court made a record concerning that overheard conversation. Laura Eads, an employee of the sheriff's department, reported that a woman subsequently identified as Tracy Price ("Price") left the courtroom during the proceedings and told someone there that she was "excited and thrilled because her boyfriend was on the jury." Other courthouse personnel had observed Price in the company of Juror Woods.

Based on this information, the court allowed the attorneys to question Woods outside the presence of the other jurors about his relationship with Price, and the possibility that he knew McQuary or his family. When this was done, Woods acknowledged that Price was his friend, that she had accompanied him to court that day, and that she was watching the proceedings. Woods denied any personal acquaintance with McQuary or any members of McQuary's family, and continued to serve on the jury.

The trial proceeded to a guilty verdict. After trial, McQuary learned from family members who had attended the trial that Price had been seen outside the courtroom talking to Berry's girlfriend, Diana Roberts. McQuary informed his trial counsel of this fact, as well as the fact that he had seen Price sitting with Diana Roberts throughout the trial.

McQuary's trial counsel subsequently filed a motion for new trial that included a claim that, "[McQuary] has obtained information that juror number 33 [Woods] has a girlfriend who may be friends with one of the State's witnesses in this cause and therefore may not have been unbiased." That motion was denied, McQuary was sentenced as a prior and persistent drug offender to a prison term of twenty-five years, and McQuary filed a notice of appeal.

Once in the custody of the Department of Corrections, McQuary met an inmate named Joshua Huffman ("Huffman"), who was acquainted with both Berry and Woods. From Huffman, McQuary learned for the first time that Woods and Berry knew each other before McQuary's trial. Huffman gave an affidavit, stating that:

I, Joshua L. Huffman, do hereby profess that I know for sure that juror Daniel ("Danny") Woods and witness Justin Berry knew each other at the time of LaRue McQuary's trial on June 30, 2004. In fact I've taken Danny along with me over to Justin's home—when he lived at 813 W. Rollins—several (at least three) times on visits, we were all recreational buddies in 2002. So Danny and Justin knew each other pretty well, and I'm willing to testify to this—if need be.

That affidavit was attached to a motion to remand for newly discovered evidence of juror misconduct that McQuary filed with this court. That motion was denied, and McQuary's conviction was affirmed in *State v. McQuary*, 173 S.W.3d 663 (Mo. App. W.D.2005).

McQuary then filed his 29.15 motion. In support of that motion, McQuary offered Huffman's deposition testimony as well as the deposition testimony of Shawn Roberts,[1] another inmate who claims to know Berry and Woods. Those depositions generally tend to show that Berry, Woods, Huffman, and Shawn Roberts all knew each other, visited each other's homes, and "partied together" before McQuary's trial. Huffman also testified that he and Woods both knew Berry by the name "Justin Berry." McQuary also offered a certified copy of a conviction showing that Woods had pled guilty to being a minor in possession of alcohol in 1999.

McQuary's 29.15 motion was denied, and this appeal follows.

## Standard of Review

 This court's review of the denial of a 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly errone-

---

**1.** Shawn Roberts testifies that his cousin, Diana Roberts, is Berry's girlfriend. This appears to be the same Diana Roberts who sat with Price at McQuary's trial.

ous." Rule 29.15; *Moss v. State*, 10 S.W.3d 508, 510 (Mo. banc 2000). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss*, 10 S.W.3d at 510.

### Ineffective Assistance of Counsel

■ McQuary's first point on appeal asserts that he was denied effective assistance of counsel in violation of his constitutional rights. In order to make a successful claim of ineffective assistance of counsel, a criminal defendant must establish "(1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Since both ineffective performance and prejudice are required, the absence of either element is fatal to such a claim. *Id.*

■ In the instant case, we need not reach the question of whether trial counsel exercised appropriate skill and diligence, since McQuary has not established prejudice under *Strickland*. In order to show prejudice flowing from the ineffective assistance of counsel, a Rule 29.15 movant bears the burden of establishing a reasonable probability that, but for the alleged errors of counsel, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ McQuary claims that his counsel was ineffective for failing to request that the venire panel be quashed following Cleeton's voir dire comment that he knew of McQuary "through law enforcement." The decision whether to quash a venire panel falls within the sound discretion of the trial court. Had the trial court denied such a request under the facts of this case, that denial would not have constituted reversible error. *See, e.g., State v. Weekley*, 92 S.W.3d 327 (Mo.App. S.D.2002).

■ The judgment currently under review specifically finds that a motion to quash the venire panel "would not have been sustained for any of the causes alleged" in McQuary's 29.15 motion. Findings of the motion court are "presumptively correct and are to be sustained unless clearly erroneous." *Crosswhite v. State*, 426 S.W.2d 67, 70 (Mo.1968). On appeal, McQuary raises no claim that would cast doubt upon the motion court's findings. Thus, McQuary has not established a reasonable probability that a request to quash the panel would have altered the subsequent proceedings in any appreciable way. Indeed, trial counsel testified, at McQuary's 29.15 hearing, to his opinion that such a course of action would have merely drawn unnecessary attention to Cleeton's comments. Under such circumstances, we cannot say that McQuary was prejudiced by trial counsel's decision not to request a new panel. Point denied.

### Juror Misconduct and Bias

McQuary's second point on appeal asserts that his right to a fair and impartial jury was violated at trial. This assertion arises from the alleged relationship between Woods, who served on McQuary's trial jury, and Berry, who was the State's primary fact witness at trial. At the hearing on his 29.15 motion, McQuary offered evidence that, if believed, would establish a significant social relationship between the two men. Based on that evidence, McQuary claims that Woods intentionally concealed his relationship with Berry during voir dire in an attempt to be seated as a member of the jury at trial.

In order to establish juror misconduct warranting the grant of a new trial, it must be shown that the juror's nondisclosure of relevant information led to prejudice "that may have influenced the jury's verdict." *State v. Mayes*, 63 S.W.3d 615, 625 (Mo. banc 2001). However, where the juror's nondisclosure is intentional, bias and prejudice will normally be presumed. *Id.* "Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable." *Id.* (quoting *Williams by Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987)).

McQuary supports his 29.15 motion with the testimony of his trial counsel that, had Woods disclosed his relationship with Berry, that would have been an important jury selection consideration. McQuary also offers deposition testimony that Woods knew Berry prior to McQuary's trial, that the relationship between the two men was significant, and that Woods knew Berry by the name "Justin Berry." During voir dire, the prospective jurors were asked whether they knew "Justin Berry," and one venire-member disclosed her prior relationship with Berry. If this evidence were to be accepted, there would seem to be no reasonable possibility that Woods failed to understand the question asked, or that any purported forgetfulness on his part was reasonable. It would thus appear that McQuary's 29.15

evidence is sufficient to support a claim of intentional nondisclosure.[2] We do not find that any non-disclosure was intentional, because that is a consideration for the motion court. We merely point out that the evidence, if believed, would support such a finding.

In response to this claim, the State does not argue that Woods' nondisclosure was unintentional or immaterial. Instead, the State asserts two interrelated arguments that McQuary's claim may not be raised in this 29.15 motion. The State argues both that a claim of juror misconduct is a claim of mere trial error, which is not cognizable in a 29.15 proceeding, and also that the specific claim of juror misconduct presented in this post-conviction motion has already been litigated in McQuary's direct appeal.

A motion for post-conviction relief is not intended as a vehicle to reopen "[i]ssues disposed of by the appellate court on review of the original judgment . . . [or for the] . . . retrial of a criminal case on its merits." *Keeny v. State*, 461 S.W.2d 731, 732 (Mo.1971) (internal quotes and citations omitted). Toward this end, it is frequently noted that mere "trial errors" are outside the scope of post-conviction proceedings. *See, e.g., State v. Redman*, 916 S.W.2d 787, 793 (Mo. banc 1996). The State argues, therefore, that McQuary's complaint raises an issue of mere trial error.

Nonetheless, where the alleged errors amount to constitutional violations, they may be addressed if "exceptional cir-

---

**2.** McQuary's claim of intentional nondisclosure is further supported by the fact that Woods did not disclose, when asked, that he had a prior "minor in possession" conviction despite the fact that another member of the venire panel disclosed his own conviction for that same offense. We do not intend to suggest that Woods' failure to disclose his prior conviction is sufficiently material to warrant a new trial. That nondisclosure, however, is of relevance in this case to the extent that it may tend to show Woods' other nondisclosure was intentional.

cumstances are shown which justify not raising the constitutional grounds on direct appeal." *Id.; See also, State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997) (noting that such claims may be raised in a Rule 29.15 motion "where fundamental fairness requires, and then, only in rare and exceptional circumstances"). Thus the question before this court is whether McQuary had, before filing his 29.15 motion, an opportunity to litigate the claim he now advances. The State argues that McQuary has not only had the opportunity, but actually has litigated this claim. We disagree with both of those arguments. The propriety of this conclusion can be demonstrated by a brief review of McQuary's unsuccessful attempts to raise the issue.

 Following the jury's verdict, McQuary filed a motion for new trial in which he asserted that Woods had "a girlfriend who may be friends with one of the State's witnesses in this cause and therefore may not have been unbiased." That motion, which was denied by the trial court, contained no claim that Woods was acquainted with Berry. At the hearing on his 29.15 motion, McQuary testified that he was unaware of any direct relationship between Woods and Berry when that motion was filed. We cannot conclude that the trial court adjudicated the potential bias created by that relationship at a time when the actual relationship at issue was yet to be discovered.

Because McQuary had already filed his notice of appeal when he did discover that relationship, jurisdiction over his case had passed to this court. McQuary thus attempted to assert his present claim by filing a motion in which he asked this court to exercise its inherent discretion to remand the case back to the trial court. *McQuary*, 173 S.W.3d at 664. That motion was denied. *Id.* at 666. That denial, however, cannot fairly be characterized as an adjudication of McQuary's claim. Since the factual basis for McQuary's present claim of juror bias was not discovered until after trial, the trial record in his direct appeal did not support that claim and the motion itself was accompanied by an affidavit setting forth the facts available to McQuarry at the time of the motion for remand.

 Because appellate courts are, fundamentally, courts of error, we review the record created at trial and can neither receive nor consider new evidence. *See 8182 Maryland Assoc. Ltd. P'ship v. Sheehan*, 14 S.W.3d 576, 587 (Mo. banc 2000) (collecting cases). Material not received in evidence at·trial is not a part of the record on appeal. *Pretti v. Herre*, 403 S.W.2d 568, 569 (Mo.1966). That record "cannot be supplemented by extraneous matter not found in the transcript nor conceded by adverse counsel." *Id.* During McQuary's direct appeal, no attempt was made to supplement the record with evidence that Woods knew Berry at the time of trial, and such a request would not have been granted, as "documents which were not considered by the trial court and were not made part of the record below cannot be introduced into the record on appeal." *Winston v. Dir. of Revenue*, 137 S.W.3d 502, 505 (Mo.App. E.D.2004). Thus, while the affidavit attached to McQuary's motion for remand might have provided a sufficient basis for this court to grant a remand, it cannot be said, for purposes of appellate adjudication, to have substituted for an actual trial court record. On an even more basic level, it should be noted that affidavit presented a factual question of the sort that appellate courts are ill equipped to decide. It is for this reason that great deference is given to trial courts and juries when factual questions are reviewed, and such review is generally limited to the sufficiency and weight of the evidence.

See, e.g., *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In the opinion denying a remand, we noted that we were not "convinced that a serious miscarriage of justice will result if we do not exercise our discretion to remand to the trial court for its consideration of the information in a motion for new trial." *McQuary*, 173 S.W.3d at 666. Had this court granted a remand, McQuary would have had an opportunity to present evidence of juror misconduct and bias to the trial court, thus creating a record capable of review by this court. Having denied that remand, we cannot now find that McQuary was provided an opportunity to fully litigate his present claim—on the merits—in his direct appeal.

McQuary then filed the instant 29.15 motion. That motion represents his only opportunity to correct the juror misconduct and bias of which he now complains. As already noted, McQuary offered sufficient evidence at his 29.15 hearing to support a finding that his constitutional right to a fair and impartial jury was violated at trial. Apparently believing that it lacked authority to decide the question, the motion court made no findings that would resolve that issue. On remand, the motion court will have the opportunity to make such findings, and—of particular significance to our analysis—will be the first court to address the fact questions at the heart of this appeal. Given the unique posture of this case, we conclude that McQuary's post-conviction motion establishes exceptional circumstances that have prevented him from asserting a claim of constitutional error that may have deprived him of a fair trial. *See Redman*, 916 S.W.2d at 793.

## Conclusion

The motion court's disposition of McQuary's claim of ineffective assistance of counsel is affirmed. The issue of juror misconduct and bias, however, is remanded to the motion court for further proceedings consistent with the principles articulated in this opinion.

HAROLD L. LOWENSTEIN, Judge, and JAMES M. SMART, JR., Judge, concur.