

# Missouri Court of Appeals

## Southern District

### Division One

DOUGLAS LEE STROSNIDER,      )
                                    )
      Movant-Appellant,       )
                                    )
v.                                )      No. SD34299
                                    )
STATE OF MISSOURI,         )      **Filed:  Dec. 13, 2016**
                                    )
      Respondent-Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Kelly W. Parker

**<u>AFFIRMED</u>**

Douglas Lee Strosnider ("Movant") appeals the denial, after an evidentiary hearing, of his motion to set aside his conviction and 25-year sentence for first-degree statutory sodomy.[1]  *See* Rule 29.15[2] and section 566.062, RSMo 2000.

In two points, Movant claims the motion court clearly erred because:  (1) a juror "intentionally failed to disclose during voir dire that he knew [Movant's] family and prejudice is presumed from such intentional non-disclosure"; and (2) Movant's defense

---

[1] This court previously affirmed Movant's conviction on direct appeal in an unpublished opinion.  We have incorporated portions of that opinion here without further attribution.  We have also independently verified that Movant's *pro se* and amended motions for post-conviction relief were timely filed.  *See **Moore v. State***, 458 S.W.3d 822, 825 (Mo. banc 2015).

[2] All rule references are to Missouri Court Rules (2016).

attorney ("trial counsel") was ineffective in failing to "clarify" to the jury during the sentencing phase[3] of Movant's trial that Movant's "related offenses . . . were not prior convictions, but only untried pending charges[.]" Movant claims he demonstrated that he was prejudiced by this failure to "clarify" because the jury later inquired "about prior convictions or pending charges" referenced by the prosecutor, and it is reasonably likely "that the jury would not have imposed a twenty-five year sentence had they known that [Movant] had no prior convictions[.]"

Because Movant's first point is not cognizable in a claim for post-conviction relief, and Movant fails to demonstrate the prejudice necessary to support his second point, we affirm.

## Applicable Principles of Review and Governing Law

We will reverse a motion court's denial of post-conviction relief only if "its findings of fact or its conclusions of law are clearly erroneous." *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009); *see also* Rule 29.15(k). To prevail on a claim of ineffective assistance of counsel, a movant must prove two things: (1) counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances; and (2) counsel's failure to exercise such skill and diligence prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984); *Taylor v. State*, 382 S.W.3d 78, 80-81 (Mo. banc 2012). If proof of either is lacking, the claim fails. *Taylor*, 382 S.W.3d at 81. "To establish prejudice for an alleged error during the sentencing phase of trial, a movant must show that but for counsel's deficient performance, there is a

---

[3] Movant was entitled to have the jury recommend a sentence if it found him guilty as the amended information did not allege an offense that would require the trial court, solely, to assess punishment, and Movant did not waive such an assessment by the jury. *See* section 557.036. As a result, Movant's trial was bifurcated into separate guilt and punishment phases.

reasonable probability that he would have received a lesser sentence." ***Washington v. State***, 415 S.W.3d 789, 795 (Mo. App. E.D. 2013).

## Evidentiary and Procedural Background

Movant was charged with one count of first-degree statutory sodomy of G.S. ("Victim"), a child under the age of 14, and he was tried by a jury in August 2013.

### *Jury Selection*

When the venire panel was first brought into the courtroom, the trial court read a preliminary instruction, "BEFORE VOIR DIRE[,]" that instructed the potential jurors that "[t]he charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense." During *voir dire*, trial counsel introduced himself and Movant to the panel. The prosecutor also asked the panel if anyone knew Movant. Some members of the panel indicated that they knew Movant, but venireperson Roger Protte ("Juror Protte") did not respond. One of Movant's grandfathers, Jim (who referred to himself as "Jimmy") Strosnider ("Movant's grandfather"), was also identified as a potential witness, and when the panel was asked whether anyone knew Movant's grandfather, Juror Protte did not respond. Juror Protte was seated as a member of the jury.

### *Guilt Phase*

Victim was the State's only witness during the guilt phase of Movant's trial, and she provided the following testimony. She was born in 1994, and Movant is her cousin. One day, when she was somewhere between the ages of four and six, Movant gave her a "signal" to meet him in a back bedroom of her grandparents' house. Once there, Movant laid her on the bed and touched her vagina with his tongue. She did not tell anyone about this event

3

when it happened, but she told her grandfather about it in 2010, after he asked her about an incident involving another girl.

Trial counsel called nine witnesses on Movant's behalf, including Movant's grandfather. Movant did not testify during the guilt phase. One of the instructions given to the jury at the conclusion of this phase again instructed that "[t]he charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense." After deliberation, the jury returned a guilty verdict.

*Penalty Phase*

During the State's opening statement on punishment, the prosecutor informed the jury, *inter alia*, that he would "have the [trial] court take notice of another case pending against [Movant], where he did it to [Victim's] sister too." Both sides then presented evidence. Once again, Victim was the State's only witness. In responding to a question about how the sexual abuse against her "came to light[,]" she testified that Movant had done "it" to another girl "who was our pastor's daughter[.]"[4] She then testified that Movant had sexually abused her about "[n]ine or ten times" at multiple locations. She described the abusive acts as Movant "fingering" her, having her "touch him" after "his pants came down[,]" and getting on top of her, "rubbing up and down[.]" Movant used to bribe her with "dollars." On one occasion he refused to pay her, but he "end[ed] up giving [her] the dollar."

---

[4] The first point in Movant's direct appeal claimed the trial court plainly erred in admitting evidence in the penalty phase of other bad acts against "'another girl[.]'" This court found that even if the "the evidence was improper, [Movant] [wa]s not entitled to reversal because he cannot demonstrate prejudice, let alone manifest injustice or a miscarriage of justice" as the "vague, brief comment cannot be said to have had a decisive effect on the jury's verdict."

4

Victim also testified, without objection, that her sister had told her that "when [she] was sixteen [Movant] came back to her and wanted to do things and left and came back and apologized and did what he wanted to anyway."

At the conclusion of Victim's testimony, the prosecutor asked the trial court to take judicial notice of another case then pending against Movant. The trial court agreed to do so, and the prosecutor stated the following to the jury:

> I intend to read the felony information. The Prosecuting Attorney of County of Crawford, State of Missouri, first being duly sworn and deposed, states that [Movant] is in violation of section 566.062, committed the felony of statutory sodomy in the first degree, punishable upon conviction under section 566.062, Revised Statutes of Missouri, in that between June 1, 1997 and September 1, 1997, in the County of Crawford, State of Missouri, [Movant] had deviate sexual intercourse with M.S. . . . who was then less than 14 years of age. Count II he's charged with committing the felony of statutory sodomy in the first degree, punishable upon conviction under section 566.062, Revised Statutes of Missouri, in that between June 1, 1997 and September 1, 1997, in the County of Crawford, State of Missouri, [Movant] had deviate sexual intercourse with [M.S.], who was then less than 14 years of age.[5]

Trial counsel called Movant and three other penalty-phase witnesses. Trial counsel did not ask Movant about the pending charges, and the State did not cross-examine Movant.

The jury was instructed that the permissible term of imprisonment for Movant's crime was between 10-30 years or life imprisonment. During its sentencing deliberations, the jury sent out a note that stated: "We would like to know what the prosecutor read during sentencing about prior convictions or pending charges[.]" Trial counsel agreed with the trial court's suggestion that it would "send them back a note to be guided by their recollection of the evidence." The trial court read aloud its written reply as, "You are to be guided in your

---

[5] We will refer to this description as "the pending charges." In reading the pending charges to the jury, the prosecutor read the name of the child in addition to the child's initials. Based upon Victim's testimony as to her sister's name, the jury could have reasonably concluded that the prosecutor was referring to Victim's sister in his opening statement and in the pending charges. The prosecutor did not reference the pending charges in his closing argument of the penalty phase.

5

deliberations by your recollection of the evidence and by the instructions of the court." In response to this recitation, trial counsel affirmatively stated, "No objection."

After completing its deliberations, the jury declared a sentence of 25 years.

*Sentencing Hearing*

Movant's sentencing hearing took place in September 2013, after a sentencing report had been prepared and submitted to the trial court and the parties. Trial counsel argued in favor of a downward departure from the jury's recommended sentence to the statutory minimum of 10 years. Trial counsel pointed out that the jury "did send a question as to [Movant's] criminal history[,]" and trial counsel did not "present that to them[.]" The trial court recognized that it had "the authority to go less than what the jury recommended of twenty-five years" and commented that it had "the guts to do it in the appropriate case, but in this case [the trial court] agree[d] with the verdict and the recommendation of the jury." *See* section 557.036.5, RSMo Cum. Supp. 2013.

*The Motion Hearing*

The same judge who presided over Movant's jury trial and sentencing also presided over the evidentiary hearing on the amended motion. Movant testified that he knew that Juror Protte knew Movant, his father, and his grandfather. He also knew that Juror Protte "was in the large group that [Movant was] choosing the jury from[,]" and Movant saw Juror Protte seated in the jury box. Before the jury had been selected, Movant did not tell trial counsel that Movant did not want Juror Protte "on the jury[,]" and Movant admitted that, at the time of the trial, he considered Juror Protte "a friend of [his] family[.]"

Trial counsel provided the following testimony. He had received the list of potential jurors before *voir dire* commenced, and he and Movant went over it. Movant did not tell

6

him that Movant knew Juror Protte, and he did not recall Movant telling him that one of the jurors had not disclosed knowing Movant and Movant's family. He admitted that his failure to ask Movant during the penalty phase if Movant had any prior convictions "was a mistake on [trial counsel's] part." He also testified that it was "a mistake" not to clarify in his sentencing-phase closing argument that Movant had no convictions arising out of the pending charges.

Juror Protte testified as follows. He knew "a Jim Strosnider at the time of trial[.]" He was "familiar with the Strosnider family" because, beginning in the seventh grade, he went to school with some of its members. When asked why he did not raise his hand when the panel was asked if anyone "knew a Jim Strosnider," Juror Protte replied, "Because I heard the best way to do that is just don't say nothing and so okay I won't say nothing and then I got picked." Although he "knew of" Jim Strosnider, he did not know Movant "until that day of court[,]" and none of this affected his decisions as a member of the jury.

*The Motion Court's Ruling*

The "<u>FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT</u>" subsequently entered by the motion court found, *inter alia*, that Movant "did not show that Juror Protte's knowledge of Movant influenced the verdict or that his knowledge of Movant was anything other than knowing who Movant was as a result of living in a small community." The motion court found that there was no showing that "Juror Protte's nondisclosure was intentional" or that prejudice resulted. Concerning trial counsel's failure to clarify that the pending charges had not resulted in any convictions, the motion court found that Movant failed to demonstrate a reasonable probability that the jury's

7

recommended sentence would have been different if it had been so informed. This appeal timely followed.

## Analysis

### *Point 1—Juror Protte*

Movant claims the motion court clearly erred in finding no "intentional nondisclosure by Juror Protte" and reminds us that when a "juror's nondisclosure is intentional, bias and prejudice will normally be presumed[,]" citing **State v. Mayes**, 63 S.W.3d 615, 625 (Mo. banc 2001) (which held that the defendant did *not* establish that the juror intentionally failed to disclose information). For the following reasons, we do not reach the merits of this point.

In **Mayes**, the appellant sought plain error review on direct appeal for his claim of juror nondisclosure. **Id.** at 624. As Movant acknowledges, a Rule 29.15 motion is not a substitute for a direct appeal. **McLaughlin v. State**, 378 S.W.3d 328, 357 (Mo. banc 2012). It is well established that "[i]ssues that could have been raised on direct appeal—even if constitutional claims—may not be raised in postconviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." **State v. Tolliver**, 839 S.W.2d 296, 298 (Mo. banc 1992).

Movant argues that "[a] Rule 29.15 motion can include a claim of jury bias based on juror nondisclosure[,]" relying on **McQuary v. State**, 241 S.W.3d 446, 454 (Mo. App. W.D. 2007) (remanded for factual findings concerning alleged intentional nondisclosure by a juror). But **McQuary** turned on "whether [the movant] had, before filing his 29.15 motion, an opportunity to litigate" that a juror had a relationship with "the State's primary fact witness at trial." **Id.** at 451, 453. The movant's motion for new trial in **McQuary** asserted

8

that the juror "'had a girlfriend who may be friends with one of the State's witnesses[.]'" *Id.* at 450. The post-conviction claim was different—it alleged a "direct relationship" between the juror and the primary fact witness that "was not discovered until after trial[.]" *Id.* at 450, 453.

Here, Movant did not challenge Juror Protte's presence on the jury in his direct appeal, and the motion hearing revealed that he certainly could have done so. Movant believed at the time of his trial that Juror Protte knew Movant and his father and grandfather, and Movant considered Juror Protte "a friend of [Movant's] family[.]" Further, the motion court was entitled to believe trial counsel's testimony that Movant did not tell him either that Movant knew Juror Protte or that Movant did not want Juror Protte on the jury. *See Hurst v. State*, 301 S.W.3d 112, 117 (Mo. App. E.D. 2010). As a result, no fundamental unfairness appears, and Movant's situation does not present the type of "rare and exceptional circumstance" that would allow his claim to be brought via post-conviction motion. *See Tolliver*, 839 S.W.2d at 298.

Point 1 is denied as non-cognizable.

*Point 2—Failure to "Clarify" the Pending Charges*

Movant's second point maintains trial counsel was ineffective in failing to "clarify" to the jury that the pending charges "were not prior convictions," and Movant was prejudiced because the jury inquired about the pending charges during its deliberations, and it is reasonably likely that the jury would not have "imposed a twenty-five year sentence [if it] had known that" Movant had not been convicted of those offenses.[6] Movant argues that

---

[6] Movant's point does not describe what reasonably competent counsel would have done to "clarify for the jury" the significance or limitations of the pending charges.

9

"it is reasonable to believe that the jury would have assigned less weight, and less blame, to unresolved pending charges versus actual convictions."

We need not decide whether trial counsel's performance was deficient because Movant fails to demonstrate a reasonable probability that he would have received a lesser sentence if trial counsel had behaved differently. *See Washington*, 415 S.W.3d at 795 (regarding requirement of a reasonable probability of a lesser sentence); *Taylor*, 382 S.W.3d at 81 (an analysis of both prongs of ineffective assistance of counsel is unnecessary if movant fails to establish one of the prongs). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

The jury had been instructed both at the beginning of *voir dire* and just before closing arguments in the guilt phase of Movant's trial that a charge of an offense is not evidence of guilt. The prosecutor's opening statement in the penalty phase characterized the pending charges as "*another case pending against* [*Movant*], where he did it to [Victim's] sister too." (Emphasis added.) Victim's testimony about her sister was vague -- that "[t]he only thing" her sister told Victim was that Movant did "what he wanted" when he "came back to" Victim's sister when she was 16 years old.

The jury's query during penalty-phase deliberations indicated that it made a distinction between charges and convictions as it specifically referenced *both* in requesting "what the prosecutor read during sentencing about prior convictions or pending charges[.]" And the trial court's reply "to be guided in your deliberations by your recollection of the

10

evidence and by the instructions of the court" directed the jury's attention back to the admonition that the charge of an offense is not evidence of guilt. Further, in contrast to the pending charges and the Victim's vague testimony about her sister and Movant, Victim provided significant penalty-phase testimony about Movant's actions toward her. She described his sexual abuse as involving different acts that occurred at multiple locations on nine or ten occasions. She also described how Movant had used money to condition her to submit herself to sexual offenses.

We do not know what "clarified" information Movant believes trial counsel should have been presented to the jury about the pending charges, but nothing more than speculation would allow us to conclude that the jury would have recommended less than a 25-year-sentence (a sentence already less than the maximum allowed under section 566.062.2) if trial counsel had provided any additional information about the pending charges in a situation in which it had heard Victim testify about multiple sexual offenses perpetrated against her by Movant, one of which took place when Victim was a very young child.

Point II is also denied, and the motion court's denial of post-conviction relief is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

11