James Edward Welsh, Judge
Bernard Jackson ("Jackson") appeals from the judgment of the circuit court of Jackson County denying his Rule 29.15[1] motion for post-conviction relief. Jackson was convicted by a jury of four counts of Class A felony robbery in the first degree, seven counts of Class A felony sodomy, and seven counts of Class A felony rape. On appeal, Jackson argues that the circuit court erred in denying him relief regarding the claim in his post-conviction motion that a juror serving at his trial committed misconduct by blogging about the case while it was being tried, thereby depriving him of due process. We affirm.
Factual Background
The Crimes and Trial[2]
As Jackson's claim on appeal alleges only juror misconduct at trial, a cursory *368 review of the facts leading to his convictions is sufficient. In 1983 and 1984, four single women, all living in the Waldo/Armour Hills area of Kansas City, were attacked in their homes in the late evening and early morning hours. All four were blind-folded, robbed, sodomized, and repeatedly raped. In each case, after the assailant fled and the attack ended, the victim went to a hospital and underwent a "rape kit" examination, which included the collection of samples for use in DNA analysis. In several cases, additional DNA evidence, fingerprints, and hair samples were recovered from the scene of the crimes. The crimes remained unsolved for more than twenty-five years.
In 2010, a "cold case" squad again reviewed the files and ran the samples using more advanced DNA technology. The DNA analyses matched the biological samples of Jackson, which were located in the Missouri State Highway Patrol DNA database. In 2010, a grand jury indicted Jackson, and he was charged with four counts of robbery in the first degree, seven counts of forcible rape, and seven counts of sodomy, against the four victims. Following trial in the Circuit Court of Jackson County, a jury convicted Jackson of all counts. The circuit court found Jackson to be a prior and persistent sexual felony offender and sentenced Jackson to a life term for each of the eighteen counts with each of the eighteen life terms to run consecutively. This Court affirmed Jackson's convictions in State v. Jackson , 410 S.W.3d 204 (Mo. App. 2013).
Post-Conviction
Jackson timely filed his Rule 29.15 motion for post-conviction relief, which was subsequently timely amended by counsel ("Motion"). As relevant to his appeal, Jackson claimed in his Motion that Juror #8 ("the Juror") committed juror misconduct by recording her own notes during trial that she later published in an online blog following the close of trial. At the evidentiary hearing on his claim, a copy of Juror's blog was submitted as an exhibit. In addition, stipulations regarding the Juror's conduct were admitted into evidence. The stipulations provided the following:
(1) [The Juror] kept handwritten notes about her experience as a juror in a personal notebook.
(2) Except during the pretrial phase of the case, the entries made in this notebook were recorded in her hotel room after the conclusion of court on days in which notebook entries were made.
(3) After the trial began, the notebook in which these thoughts were recorded never left her hotel room until after the conclusion of the trial and her discharge as a juror.
(4) [The Juror] never personally shared her thoughts recorded in her personal notebook or showed the notes recorded in that notebook to any of her fellow jurors before, during, or after trial.
(5) [The Juror] has never personally spoken to any of her fellow jurors about the case since the trial concluded.
(6) The contents of the notebook were not posted on her blog until after the trial was over and until she had been discharged from her duties as a juror.
(7) The entries "Uncategorized," "Pre-Trial," "During the Trial," and "Post-Trial" at the end of each blog entry are titles of sections included within the blog, and do not reference or refer to the time frames when the entries were posted online.
*369 (8) [The Juror] made her notes and posted her blog after the trial mainly as a way to communicate her experience with multiple interested parties without having to repeat it over and over again.
(9) During trial, including jury deliberations, [the Juror] was neither contacted by any unauthorized or [sic] party about the facts of the case, nor was she influenced by any outside information during the trial. In addition, she did not share any case-related information with anyone outside the jury room during the pendency of the trial or jury deliberations.
(10) [The Juror] did not talk about the facts of the case with her fellow jurors during the pendency of the trial until jury deliberations began and she did not form an opinion that Jackson was "guilty" or "not guilty" until after participating in deliberations with her fellow jurors and casting her final vote.
Jackson alleged the Juror's actions violated the circuit court's instructions to the jury and deprived him of due process.
The circuit court denied Jackson's post-conviction claim finding that he had not demonstrated how he was deprived of due process and a fair trial. The court also found that the claim was not cognizable in the post-conviction proceeding. Jackson now appeals.
Standard of Review
Our review of the circuit court's ruling on a Rule 29.15 motion is limited to determining whether its findings and conclusions are clearly erroneous. Rule 29.15(k). The circuit court's findings are presumed to be correct. Johnson v. State , 406 S.W.3d 892, 898 (Mo. banc 2013). Findings and conclusions are clearly erroneous only if, after reviewing the record, we are "left with a definite and firm impression that a mistake has been made." Id.
Analysis
In his sole point on appeal, Jackson argues the circuit court clearly erred in denying his claim that the Juror committed juror misconduct by engaging in behavior contrary to Instruction 1 (MAI 302.01), and its shortened recess reminders under MAI 300.04, that jurors not blog about a case while the case is being tried. Jackson argues that he was denied due process in that the Juror's recordation of notes that she intended to post in a blog at the conclusion of trial was contrary to the purpose of the instructions. Jackson argues that because of the high profile media attention given the case and some of the content of the blog, there is not confidence in the fairness and reliability of the jury's verdicts and it constitutes structural error requiring reversal.
Is the Juror Misconduct Claim Cognizable in Post-Conviction Proceeding?
Prior to addressing the substance of Jackson's juror misconduct claim, it is necessary to consider at the outset the State's argument that the claim asserted-juror misconduct-is not cognizable in a Rule 29.15 proceeding. It is generally true that "mere 'trial errors' are outside the scope of post-conviction proceedings." McQuary v. State , 241 S.W.3d 446, 452 (Mo. App. 2007). This is because "[a] motion for post-conviction relief is not intended as a vehicle to reopen '[i]ssues disposed of by the appellate court on review of the original judgment ... [or for the] ... retrial of a criminal case on its merits.' " Id. (quoting Keeny v. State , 461 S.W.2d 731, 732 (Mo. 1971) (internal quotes and citations omitted)). However, this Court has *370 previously held that an exception to this general rule exists where the errors alleged amount to "constitutional violations" and if "exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." Id. at 452-53. In McQuary , this Court found that a claim of juror misconduct amounting to a constitutional violation could be properly raised in a Rule 29.15 motion where the factual basis of the misconduct claim was not discovered until after trial. Id. 453-54.
The evidence produced at the evidentiary hearing showed that Jackson's trial counsel was not aware that the Juror was writing in her private notebook in the evenings in the privacy of her hotel room and trial counsel did not learn of the blog until it was discovered by post-conviction counsel. As trial counsel was not aware of the blog until it was found by post-conviction counsel, the claim of juror misconduct could not have been raised on direct appeal. In McQuary , this Court found that because trial counsel did not discover that one of the jurors and the State's primary fact witness at trial had an undisclosed relationship and, therefore, he was not able to litigate the issue before the circuit court, exceptional circumstances existed to justify the consideration of the claim at the Rule 29.15 hearing. Id. at 454. The same principle governs here. The State's argument that the blog was discoverable because it was posted the day after the close of trial is not persuasive. Theoretically, the relationship existing in McQuary between the juror and witness was discoverable (i.e., existing in the world) during voir dire and trial, but was not, in fact, discovered until after trial. It would be too great a burden to impute knowledge of all published material on the internet to defense counsel as is apparently argued by the State. We conclude that exceptional circumstances exist justifying the consideration of Jackson's juror misconduct claim as the misconduct was not discovered until after trial and justifies Jackson's failure to raise his constitutional claim on direct appeal.
In addition, the State argues that Jackson's claim should not be considered because he failed to allege facts in his Motion demonstrating that the evidence regarding the writing and publication of the blog was not discovered or discoverable until after the time for filing a motion for a new trial expired to support the "rare and extraordinary circumstances" exception detailed above. Rule 29.15(d) requires that the movant include every known claim for relief known in his post-conviction motion. Rule 29.15(e) requires that counsel amend the post-conviction motion to "sufficiently allege[ ] additional facts and claims." Our courts have repeatedly held that a movant for post-conviction relief is "required to allege all facts necessary to show an entitlement to post-conviction relief." Coon v. State , 504 S.W.3d 888, 892 (Mo. App. 2016).
The State is correct in asserting that Jackson's Motion failed to allege any specific facts regarding when he discovered the existence of the Juror's blog. Jackson's Motion merely states that the blog was "at some point posted online" and "it is unclear exactly when the information was actually posted [....]" The Motion is, therefore, arguably deficient in failing to allege any facts whatsoever regarding the timing of the discovery of the blog and Jackson's inability to raise his claim of juror misconduct on direct appeal. Such allegations are necessary to invoke the extraordinary circumstances required by McQuary to make his claim cognizable on appeal. While Jackson is correct that the conclusion that rare and extraordinary circumstances exist to make his claim cognizable in post-conviction is a legal conclusion, it is his burden to allege all facts *371 necessary to show "entitlement to post-conviction relief", which he cannot do without alleging facts sufficient to make his claim cognizable in post-conviction. See e.g., Williams v. State , 497 S.W.3d 395, 399 (Mo. App. 2016) (claims of newly discovered evidence not cognizable on post-conviction motion except for claim of use of perjured evidence; motion must allege sufficient facts to show State knowingly used perjured testimony). However, as the circuit court granted Jackson an evidentiary hearing on the claim, denied the substantive claim, and this Court agrees that the substantive juror misconduct claim must also fail on the merits, we will also address the substance of Jackson's juror misconduct claim.
Substantive Juror Misconduct Claim
Jackson argues that the Juror, in keeping a personal journal on her reflections regarding the trial and publishing a blog including her reflections after the close of trial and her discharge from jury service, violated Jury Instruction 1 ("Instruction 1"). Instruction I is modelled after MAI-CR 302.01, which provided, in relevant part, the following:
You should not communicate, use a cell phone, record, photograph, video, e-mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes use of the internet, and websites such as "Facebook," "MySpace," and "Twitter," or any other personal or public website.
Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have heard all the evidence and the case is given to you to decide.
Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.
Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.
After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.
This instruction was read to the jury at the beginning of trial.[3] Jackson argues that the Juror's recordation of her own personal *372 notes about her experiences as a juror in the evenings in her hotel room and publishing them on her blog after she was discharged as a juror violated Instruction 1. Jackson argues that the violation of the Instruction constitutes "structural error" and, therefore, requires reversal.
Neither Jackson nor the State has cited authority that squarely addresses the burden placed on the movant in a Rule 29.15 post-conviction proceeding to prove a claim of juror misconduct. When the issue of juror misconduct is raised in a motion for a new trial, the defendant "has the burden to show that misconduct occurred, after which the burden shifts to the State to show that the jurors were not subjected to improper influences." State v. Cummings , 514 S.W.3d 110, 113 (Mo. App. 2017). Rule 29.15(i) merely states that "[t]he movant has the burden of proving the movant's claims for relief by a preponderance of the evidence." We need not decide today whether the same burden shifting applies in the post-conviction context as it is clear that Jackson must first prove that misconduct occurred by a preponderance of the evidence, and we find that the circuit court did not err in concluding that he failed to meet this burden.
First, Jackson claims the Juror violated the letter and/or spirit of Instruction 1 in two ways. Regarding his first argument, the relevant portion of Instruction 1 follows:
You should not communicate , use a cell phone, record, photograph, video, e-mail, blog , tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes use of the internet, and websites such as "Facebook," "MySpace," and "Twitter," or any other personal or public website.
(emphasis added). Jackson argues that the Juror violated Instruction 1 when she recorded her own personal notes on her reflections about the trial in the evenings in the privacy of her hotel room but while the trial was ongoing even though they were not communicated to anyone or published on the internet until after the conclusion of trial. We disagree. The language of the instruction provides that the juror is not to communicate, including blog, with "any person " about any thoughts or opinions on the trial. When read as a whole, the instruction is clearly only prohibiting the communication by the juror with any other person in the various modes of communication listed regarding her thoughts or opinions on the trial during trial. See MAI-CR 300.04.1 ("[y]ou should not e-mail, text, blog, instant message, or use any other form of communication regarding the case or anyone involved in the case until the trial has ended and you have been discharged as a juror"). Nothing in either this instruction or the law prohibits the juror from keeping a private personal journal or diary on her own time and later communicating with the public regarding her experiences at trial after the discharge of the juror from her service. As explained above, the evidence from the evidentiary hearing was undisputed that the Juror did not show her personal notes to any other person, did not publish them on any platform, and did not in any other way communicate with any person regarding her reflections until after she was discharged from jury service.
Second, Jackson argues that the Juror violated Instruction 1's admonition regarding note-taking. That section provides:
Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you *373 for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.
Jackson interprets the above section to mean that jurors are forbidden from recording their personal recollections and reflections in a private journal on their own time after trial has ended each day in a personal notebook. We disagree that the instruction so requires. The above section when read as a whole clearly refers to the taking of notes during trial and inside the courtroom regarding the evidence presented to the jury. Any notes taken by the juror during trial in the courtroom must be made in the notebooks provided by the court and those notebooks and notes contained therein may not be taken outside of the courtroom until the case is submitted for deliberations. The section does not forbid jurors from keeping personal journals or diaries on their own time. Jackson has cited no authority for the expansive interpretation of the above Instruction that he advocates on appeal. We reject his interpretation of the instruction.
We agree with the circuit court's finding that Jackson has failed to demonstrate that juror misconduct occurred. The Juror did not violation Instruction 1. The Juror maintained her own journal in the privacy of her hotel room reflecting her own thoughts and feelings regarding her experience as a juror. The Juror's private journal did not leave her hotel room until after the close of trial and she never showed her journal to any fellow juror. The Juror did not post her blog until after she was discharged from service. The Juror was not contacted by any unauthorized parties about the facts of the case and she was not influenced by any outside information. She did not share any case-related information with anyone outside the jury room during the trial or deliberations. Finally, the Juror did not discuss the facts of the case with her fellow jurors until after deliberations began, and she kept an open mind regarding whether Jackson was guilty or not guilty until after participating in deliberations with her fellow jurors. Contrary to Jackson's claim of juror misconduct, the evidence established that the Juror performed her service thoughtfully and pursuant to the circuit court's instructions.
The Point is denied.
Conclusion
The judgment of the circuit court is affirmed.
Judge James Welsh writes for the majority. Presiding Judge Cynthia Martin concurs.
Judge Karen King Mitchell writes a separate concurring opinion.

All rule citations refer to the MISSOURI SUPREME COURT RULES 2016 unless otherwise indicated.

The facts regarding Jackson's crimes and trial have been taken from this Court's opinion affirming Jackson's convictions in State v. Jackson , 410 S.W.3d 204 (Mo. App. 2013).

Although Jackson's Motion alleged a violation of MAI-CR 300.04, which is a shortened admonition to remind the jury it must follow the court's instructions, the actual pattern instruction that includes the blogging language is MAI-CR 302.01. Instruction 1, modelled after MAI-CR 302.01, was read to the jury at the beginning of trial and included the admonition against blogging. We find that the claim as pleaded is sufficient. There is no indication in the record or on appeal that any party or the court was misled or confused regarding the basis of Jackson's claim of juror misconduct.